BRIAN J. STRETCH (CABN 163973)
Acting United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

JOSEPH M. ALIOTO JR. (CABN 215544)
Assistant United States Attorneys

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    Fax: (510) 637-3724
    Joseph.Alioto@usdoj.gov

JENNIFER R. SYKES (VABN 84520)
ROBERT S. TULLY (DCBN 467446)
Trial Attorneys, Organized Crime and Gang Section

    1301 New York Avenue NW
    Washington, D.C. 20005
    Telephone: (202) 616-3492
    Fax: (202) 514-3601
    Jennifer.Sykes@usdoj.gov

    1301 New York Avenue NW
    Washington, D.C. 20005
    Telephone: (202) 616-8389
    Fax: (202) 514-3601
    Robert.Tully@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 12-00792 YGR (NC) |
| Plaintiff, | GOVERNMENT'S CONSOLIDATED OPPOSITION TO DEFENDANT HENRY CERVANTES AND ALBERTO LAREZ'S MOTIONS TO LIMIT OR EXCLUDE GANG EXPERT EVIDENCE |
| v. | |
| HENRY CERVANTES, et. al., | |
| Defendant. | (Dkt. 659, 663, 666, 730) |

# TABLE OF CONTENTS

I. Factual Background ..................................................................................................1

II. Argument ..................................................................................................................2

    A. The Government's Second Expert Disclosure Is Sufficient To Satisfy Its Obligations Pursuant to Fed. R. Crim. P. 16(A)(1)(g). ..................................................2

    B. Defendants' Objections To The Gang Experts' Proffered Testimony Are Unavailing. ...............................................................................................5

        1. The Gang Experts Employ a Reliable Methodology Under FRE 702 ........................................................................................5

        2. The Gang Experts Do Not Improperly Rely on Hearsay or Violate *Crawford* ................................................................................7

        3. The Proffered Testimony Does Not Constitute Improper Opinion on Mental State ..........................................................10

        4. The Proffered Testimony Will Assist the Jury ...................................11

        5. The Proffered Testimony is Neither Unfairly Prejudicial Nor Needlessly Cumulative ..............................................................13

        6. The Gang Experts Are Permitted to Testify as Fact Witnesses ............13

    C. A Daubert Hearing Is Not Necessary ..................................................................15

III. Conclusion ..............................................................................................................15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Crawford v. Washington*, 541 U.S. 36 (2004) .................................................................. 8, 9, 10

*Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993) ....................................................... 8, 15

*Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851 (9th Cir. 1997) .............................................................................................................. 12

*United States v. Alonso*, 48 F.3d 1536 (9th Cir. 1995) ................................................................ 14

*United States v. Anchrum*, 590 F.3d 795 (9th Cir. 2009) ............................................................ 14

*United States v. Bailey*, 607 F.2d 237 (9th Cir. 1979) ................................................................. 12

*United States v. Castro* 03-CR-851-ADS (E.D.N.Y. Sept. 15, 2009) .................................................................................................................. 10

*United States v. Castro*, 03-CR-851-ADS (E.D.N.Y. Sept. 29, 2009) .................................................................................................................. 10

*United States v. Cazares*, 788 F.3d 956 (9th Cir. 2015) ................................................................ 8

*United States v. Cerna*, 08-CR-0730 WHA (N.D. Cal. 2008) ....................................................... 14

*United States v. Chong*, 178 Fed. App'x 626, 627 (9th Cir. Aug. 18, 2005) (unpublished) ....................................................................................... 7

*United States v. Chong*, 92-CR-260-DJL (N.D. Cal 1992) ............................................................. 7

*United States v. Cyrus*, 05-CR-0324-MMC (N.D. Cal. Mar. 25-26, 2009) ..................................................................................................................... 6

*United States v. Decoud*, 456 F.3d 996 (9th Cir. 2006) ................................................................. 5

*United States v. Diaz*, 2006 WL 2699042 (N.D. Cal. Sept. 19, 2006) .............................................................................................................. 9, 14

*United States v. Gomez*, 725 F.3d 1121 (9th Cir. 2013) ............................................................... 11

*United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) ....................................................... passim

*United States v. Martinez*, 2015 WL 269794 (N.D. Cal. Jan. 20, 2015) ..................................................................................................................... 6

*United States v. McIntosh*, 2008 WL 4754763 (C.D. Cal. Mar. 14, 2008) ..................................................................................................................... 6

*United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008) ............................................................... 9, 10

*United States v. Mejia*, 597 F.3d 1329 (D.C. Cir. 2010) .................................................................. 9

*United States v. Mills*, 704 F.2d 1553 (11th Cir. 1983) .................................................................. 13

*United States v. Padilla*, 387 F.3d 1087 (9th Cir. 2004) .................................................................. 6

*United States v. Patterson*, 819 F.2d 1495 (9th Cir. 1987) .............................................................. 7

*United States v. Prisco*, 08-CR-885 (NRB) (S.D.N.Y. Apr. 14, 2009) ............................................................................................................................................. 9

*United States v. Rubi-Gonzales*, 03-CR-851-ADS (E.D.N.Y. July 16, 2009) ............................................................................................................................................. 10

*United States v. Slocum*, 02-CR-938-DOC (C.D. Cal. Feb. 6, 2007) ............................................ 6

*United States v. Takahashi*, 205 F.3d 1161 (9th Cir. 2000) ............................................................ 6

*United States v. Unruh*, 855 F.2d 1363 (9th Cir. 1987) .................................................................. 8

*United States v. Uvino*, 07-CR-725-JBW (E.D.N.Y. Dec. 3, 2008) ............................................... 9

*United States v. Valencia-Amezcua*, 278 F.3d 901 (9th Cir. 2002) ........................................... 6, 7

*United States v. Valle-Martinez*, 336 Fed. App'x 720 (9th Cir. 2009) (unpublished) ............................................................................................................................. 14

*United States v. Vera*, 770 F.2d 1232 (9th Cir. 2014) ..................................................... 8, 10, 12, 14

*United States v. W.R. Grace*, 504 F.3d 745 (9th Cir. 2007) ........................................................ 10

*United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) (en banc) ............................................................................................................................................. 3

**FEDERAL RULES**

Fed. R. Crim. P. 16 .................................................................................................................... 1, 3

Fed. R. Evid. 403 .......................................................................................................................... 13

Fed. R. Evid. 703 ............................................................................................................................ 8

The Government respectfully submits this opposition to multiple motions filed by Defendants Henry Cervantes and Alberto Larez ("Defendants") (docs. 659, 663, 666, 730) requesting the limitation or exclusion of expert testimony by Mr. Anthony Garrow, Sergeant Daniel Livingston, and Mr. John Feeney ("Gang Experts").[1] Defendants advance a broad spectrum of discovery, evidentiary, and constitutional-based challenges to the proffered gang expert testimony. None of their arguments, however, have merit.

On two separate occasions, the Government has supplied Defendants with extensive information detailing the Gang Experts' experience, expert opinions, and bases for those opinions. With its most recent disclosure on August 17, 2015, the Government has satisfied its obligations pursuant to the Federal Rule of Criminal Procedure and this Court's order on July 28, 2015. *See* Dkt. 680 ("July 28, 2015 Order"). Moreover, as evident from the disclosures themselves, and as explained in further detail below, any expert testimony the Government will elicit from these three witnesses is proper under the U.S. Constitution, the Federal Rules of Evidence, and this Circuit's well-established case law on gang experts. Defendants' motions should therefore be denied.

**I.   Factual Background**

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), on June 8, 2015, the Government turned over a summary of anticipated testimony by the Gang Experts to Defendants ("First Expert Disclosure"). On June 22, 2015, Defendant Henry Cervantes filed a motion challenging the First Expert Disclosure as inadequate under Rule 16(a)(1)(G).[2] *See* Dkt. 645 ("Rule 16 Mot."). The Government opposed this motion in a July 7, 2015 response. *See* Dkt. 654. On July 28, 2015, the Court "order[ed] the government to revise the disclosures such that they sufficiently identify both the (1) opinions to be offered and (2) the particular bases for each opinion." *See* July 28, 2015 Order.

---

[1] In this Consolidated Response, the Government addresses all three motions Defendants have filed challenging the Gang Experts. *See* Dkt. 659, 663, 666, 670.

[2] Defendants Alberto Larez and Jamie Cervantes joined in this motion. *See* Dkt. 646, 648.


On July 9, 2015, Defendant Larez filed a motion seeking to exclude or limit the Gang Experts' testimony, *see* Dkt. 659,[3] under a wide range of disparate theories, including: (1) unreliability of expert methodologies; (2) Crawford and FRE 703 violations; (3) jury confusion; (4) undue prejudice; (5) cumulative testimony; and (6) an impermissible dual role of expert and fact witnesses, *see* Dkt. 666 ("Larez Mot.").[4]  On the same day, Defendant Henry Cervantes filed a motion raising many of the same arguments, in addition to a few others.  *See* Dkt. 663 ("Cervantes Mot.").[5]

On August 17, 2015, the Government complied with the July 28, 2015 Order by turning over a far more detailed account of the Gang Expert's expertise, opinions, and bases of opinions, including dozens of pages summarizing certain coded words and call-log information ("Second Expert Disclosure").  The Government will continue to provide coded translations of words and phrases from telephone calls, letters and other written communications as they are completed.  With the Court's permission, Defendant Henry Cervantes filed another motion on September 23, 2015, supplementing the Defendants' earlier motions to limit or exclude the Gang Experts' testimony.  *See* Dkt. 730 ("Supp. Mot.").  In addition to renewing all objections raised in previously-filed motions, Defendant Henry Cervantes again objected to the Second Expert Disclosure as inadequate under Federal Rule of Criminal Procedure 16(A)(1)(g).

**II.     Argument**

    **A.     The Government's Second Expert Disclosure Is Sufficient To Satisfy Its Obligations Pursuant to Fed. R. Crim. P. 16(A)(1)(g).**

Defendants first claim the Government has failed to satisfy its disclosure obligations under the Federal Rules of Criminal Procedure.  *See* Larez Mot. at 3–4, 21–22; Supp. Mot. at 4–7.  As a preliminary matter, arguments raised in the Rule 16 Motion have been largely, if not entirely, mooted by the Government's compliance with the July 28, 2015 Order.  *See* Second Expert Disclosure.

---

[3] Defendant Larez's Memorandum of Points and Authorities in Support of Dkt. 659 Motion to Limit or Exclude Gang Experts was not properly filed on June 9, 2015.  *See* Dkt. 660.  The Memorandum of Points and Authorities was, accordingly, filed the following day.  *See* Dkt. 666.

[4] Defendants Jamie Cervantes and Henry Cervantes joined in this motion.  *See* Dkt. 672, 673.

[5] Defendants Alberto Larez and Jamie Cervantes joined in this motion.  *See* Dkt. 671, 672.

Nevertheless, Defendant Henry Cervantes maintains the Second Expert Disclosure is deficient because, "[l]ooking at the two disclosures placed side by side, it is clear that the first and second expert disclosure largely repeat, in slightly differing typewritten formats, the same general offers of proof." Supp. Mot. at 3.  This claim has no factual support and does not justify the extreme remedy Defendants seek.

Federal Rule of Criminal Procedure 16(a)(1)(G) provides:  "At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial . . . . The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *See also United States v. W.R. Grace*, 526 F.3d 499, 513 (9th Cir. 2008) (en banc).

As explained in great detail in the First and Second Expert Disclosures, Supervisory Intelligence Officer for the Federal Bureau of Prison Anthony Garrow, will testify about the history, structure, membership requirements, practices, rules, hierarchy, imagery, signing, and colors of *Nuestra Familia*. Mr. Garrow's expert opinion is based on his 17 years of experience investigating *Nuestra Familia*, which includes interviewing hundreds of *Nuestra Familia* members and their sworn enemies, reviewing hundreds of telephone calls involving *Nuestra Familia* members, and thousands of hours spent observing *Nuestra Familia* members inside prisons under his supervision.  *See* First Expert Disclosure, pp. 2–4; Second Expert Disclosure, pp. 2–5.

Sergeant Dan Livingston of the Campbell Police Department, meanwhile, will give the jury his expert opinion regarding the history and nature of the conflict between "Federal" and "State" members of *Nuestra Familia*, the impact that the sale of drugs has on interstate commerce, and the make-up of *Norteño* street gangs which fall under the *Nuestra Familia* umbrella.  Sergeant Livingston's opinions are based on his extensive interactions investigating *Nuestra Familia* in Santa Clara County since 2004, during which time he has been involved in six large-scale investigations of *Nuestra Familia*, interviewed approximately 100 members of *Nuestra Familia*, and reviewed much of the evidence seized related to *Nuestra Familia* investigations over the past decade.  Sergeant Livingston has also conducted interviews

with CDC personnel, FBI agents, Special Service Unit personnel, gang investigators at Pelican Bay prison, and Santa Clara *Nuestra Familia* regiment commanders and gang members about the organization, as well as reviewed intercepted "kites" and other written communications, recorded jail calls, and evidence obtained from the execution of search warrants, such as money order receipts. *See* First Expert Disclosure, p. 4; Second Expert Disclosure, pp. 5–7.

Finally, John Feeney, Special Investigative Analyst for the Federal Bureau of Prisons, will testify about the methods used by members of the *Nuestra Familia* to communicate among themselves in code and provide his expert opinion about what those coded messages mean. For more than eight years, Mr. Feeney was tasked with monitoring the daily communications of *Nuestra Familia* members. He has also listened to thousands of hours of telephone communications between *Nuestra Familia* members spanning a period of nearly 14 years. Indeed, at one point, Mr. Feeney was the point-person within the Federal Bureau of Prisons for interpreting coded communications by *Nuestra Familia* members, including Andrew Cervantes, Skip Villanueva, Alberto Larez, and Henry Cervantes. From his extensive experience and years of formal training, Mr. Feeney has formed expert opinions about the codes used by *Nuestra Familia* members to/from and within prisons around the country, including many of those coded messages at issue in this case. *See* First Expert Disclosure, pp. 4–5; Second Expert Disclosure, pp. 7–8.

In addition, the Government provided Defendants with extensive discovery documenting Mr. Feeney's basis for interpreting the *Nuestra Familia* codes, including: (1) 85 pages of itemized translations of coded words from transcribed calls, along with the specific bases for interpreting each word or phrase (*see* Second Expert Disclosure, Exhibit A); and (2) 51 pages of call-log information created by Mr. Feeney, which account for dozens of calls between members of *Nuestra Familia*, including Defendants (*see* Second Expert Disclosure, Exhibit B). As explained in the Second Expert Disclosure, and reiterated at the October 21, 2015 Status Conference, the Government will continue to provide this type of information to Defendants on an ongoing basis. *See* Second Expert Disclosure, p. 8.

The Government has now produced dozens of pages pertaining to the Gang Experts and their proffered testimony. Between the two disclosures, Defendants have already received more than sufficient notice of, and explanations for, the Gang Experts' opinions and extensive qualifications. Defendants' objection to the adequacy of discovery production thus far should therefore be rejected.

**B.     Defendants' Objections To The Gang Experts' Proffered Testimony Are Unavailing.**

**1.     The Gang Experts Employ a Reliable Methodology Under FRE 702**

Defendants' chief contention appears to be that the proffered gang expert testimony should be precluded because there is no specific scientific methodology underlying the testimony that fits neatly under *Daubert* and that the testimony is not proper under Federal Rule of Evidence 702. Specifically, Defendants argue the Government has not supplied an adequate basis to determine how Mr. Feeney interpreted certain coded words, *see* Larez Mot. at 2–4, 9–12; Cervantes Mot. at 1; Supp. Mot. at 3–7, or detailed sufficient bases for all three Gang Experts' general knowledge of *Nuestra Familia*, *see* Larez Mot. at 21–22; Cervantes Mot. at 1; Supp. Mot. at 7–10. Many of these objections, like those raised in the Rule 16 Motion, have been mooted by the Second Expert Disclosure. Indeed, in challenging the First Expert Disclosure, Defendant Larez explained that the Ninth Circuit had previously held the government "complied with the requirements . . . for interpreting new words by explaining his methodology as to how he derived the meaning of *each* word from *each* call." Larez Mot. at 10 (citing *United States v. Decoud*, 456 F.3d 996, 1013–14 (9th Cir. 2006)) (emphasis in original). With the Second Expert Disclosure, the Government has now done exactly what Defendant asked for—laid out the specific methodology Mr. Feeney used for interpreting *each* coded word. *See* Second Expert Disclosure, Exhibit A.

Regardless, Defendants' objections are also foreclosed by Ninth Circuit precedent. In *United States v. Hankey*, perhaps the leading Ninth Circuit case regarding gang expert testimony,[6] the Court of Appeals held that the *Daubert* factors "simply are not applicable to this kind of testimony, whose

---

[6] According to Westlaw.com, *Hankey* has been cited in more than 400 court opinions since its publication in 2000.

reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." 203 F.3d 1160, 1169 (9th Cir. 2000). As the Court of Appeals explained, a witness who has "devoted years working with gangs, knew their 'colors,' signs and activities," "heard the admissions of the specific gang members involved," and "communicated and worked undercover with thousands of other gang members," is entitled to offer an expert opinion. *Id.* Although *Hankey* involved a rebuttal witness, this distinction does not go to the admissibility of evidence under Rule 702. Indeed, in subsequent cases, the Ninth Circuit has reaffirmed that gang experts may testify regarding a gang's rules requiring mutual loyalty. *See*, *e.g.*, *United States v. Padilla*, 387 F.3d 1087, 1094 (9th Cir. 2004); *United States v. Takahashi*, 205 F.3d 1161, 1164 (9th Cir. 2000).

Trial judges in the Northern and Central Districts of California regularly permit the type of gang expert testimony proffered here. *See*, *e.g.*, *United States v. Martinez*, 2015 WL 269794, at *2–3 (N.D. Cal. Jan. 20, 2015) (Judge Alsup allowed Detective Travis Menke to testify, subject to certain limitations, about the structure, gang graffiti, symbols, signs, colors, numbers, initiation rituals, and gang discipline of *Nuestra Familia* and one of its smaller Norteño cliques, Varrio South Park); *United States v. Cyrus*, 05-CR-0324-MMC (N.D. Cal. Mar. 25-26, 2009 Transcript) (Judge Chesney permitted San Francisco Police Department Inspector Brian Peagler to offer expert opinions on Page Street Mob, including his opinion that a gang member would enhance his reputation in the gang if he killed a cooperating federal witness); *United States v. McIntosh*, 2008 WL 4754763 (C.D. Cal. Mar. 14, 2008) (Judge Phillips allowed expert gang testimony on the origins, purpose, structure, symbols, and membership rules of the Aryan Brotherhood, on the general methods of communication used by the Aryan Brotherhood, and on the Aryan Brotherhood's relationship with other gangs); *United States v. Slocum*, 02-CR-938-DOC (C.D. Cal. Feb. 6, 2007) (Judge Carter denied the defendant's request for a pre-trial *Daubert* hearing, noting that, "to the extent [the defendant's] challenges are to gang or criminal enterprise expert testimony in general, the Ninth Circuit has upheld the use of such testimony") (citing *United States v. Valencia-Amezcua*, 278 F.3d 901, 908 (9th Cir. 2002)); *United States v. Chong*, 92-CR-

260-DJL (N.D. Cal 1992) (Judge Jensen allowed Oakland Police officer to provide expert opinion regarding the structure of Asian organized crime groups in the Bay Area, including the Wo Hop To).

Furthermore, the admission of this type of gang expert testimony is regularly upheld by the Ninth Circuit. *See*, *e.g.*, *United States v. Chong*, 178 Fed. App'x 626, 627 (9th Cir. Aug. 18, 2005) (unpublished) (affirming decision of the district court to allow expert testimony "as to the structure of the Wo Hop To and other organizations, as well as the different positions within those groups"); *Valencia-Amezcua*, 278 F.3d at 908–09 (upholding admission of gang expert testimony and noting "it is commonplace that expert testimony regarding the structure of criminal enterprises is admissible to help the jury assess a defendant's involvement in that enterprise . . . [because this] evidence helps the jury to understand complex criminal activities, and alerts it to the possibility that combinations of seemingly innocuous events may indicate criminal behavior") (internal citation and quotation marks omitted); *United States v. Patterson*, 819 F.2d 1495, 1507 (9th Cir. 1987) (observing that "[e]xpert testimony on the structure of criminal enterprises is allowed to help the jury understand the scheme and assess a defendant's involvement in it," Court of Appeals upheld police officer's expert testimony on the operation of criminal narcotics distribution organizations).

Between the First and Second Expert Disclosures, the Government has now provided a firm foundation for the expert testimony of Mr. Garrow, Sergeant Livingston, and Mr. Feeney. The Government has found no legal support for Defendants' motions to exclude or limit the proffered testimony on the grounds the experts' methodologies or bases of knowledge are unreliable. As the cases cited above make clear, expert testimony regarding, *inter alia*, the origins, history, structure, rules, rituals, practices, symbols, purpose, operations, codes, and other aspects of criminal enterprises is admissible at trial. Defendants' claim that the expert testimony proffered here is precluded by *Daubert* and Rule 702 is without merit.

### 2. The Gang Experts Do Not Improperly Rely on Hearsay or Violate *Crawford*

Defendants next contend that the proffered expert testimony violates evidentiary rules against hearsay, as well as the constitutional right to confront one's accuser articulated in *Crawford v.*

*Washington*, 541 U.S. 36 (2004).  *See* Larez Mot. at 5–9, 24–27; Cervantes Mot. at 1, 7–9; Supp. Mot. at 2.  Yet this claim is foreclosed by this Circuit's interpretation of Federal Rule of Evidence 703.

In *Crawford*, the Supreme Court held that a defendant's Sixth Amendment Confrontation Clause rights are violated by the admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had . . . a prior opportunity for cross-examination." 541 U.S. at 53–54.  Nevertheless, it is well-established that an expert witness may rely upon inadmissible hearsay evidence in offering an expert opinion to the jury.  As the Federal Rules of Evidence expressly provide: "If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted."  Fed. R. Evid. 703; *see also Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 592 (1993) (holding that "an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or experience"); *United States v. Unruh*, 855 F.2d 1363, 1376 (9th Cir. 1987) (recognizing that, under Rule 703, an expert is allowed to rely on hearsay in formulating opinions).  Indeed, the Ninth Circuit has plainly held that, "[u]nder these rules, there is generally no *Crawford* problem when an expert applies his training and experience to the sources before him and reaches an independent judgment." *United States v. Vera*, 770 F.2d 1232, 1237 (9th Cir. 2014) (internal citation and quotation marks omitted).

When applying Federal Rule of Evidence 703, Courts of Appeals, including the Ninth Circuit, have consistently upheld the admission of gang expert testimony which relies upon inadmissible hearsay evidence.  *See*, *e.g.*, *United States v. Cazares*, 788 F.3d 956, 976–78 (9th Cir. 2015) (rejecting defendants' FRE 703 and *Crawford* challenges and affirming the admission of gang expert testimony regarding the structure, membership requirements, practices, graffiti, and slang of the Avenues gang, as well as gang members' attitudes toward African-Americans); *Vera*, 770 F.2d at 1238–39 (holding that, because a gang expert "distilled and synthesized what he had learned through his experience" and his testimony was "not merely repackaged testimonial hearsay but was an original product that could have been tested through cross-examination," such expert testimony complied with *Crawford* and the

USA OPPOSITION TO DEFENDANTS' MOTION TO LIMIT OR EXCLUDE EXPERT TESTIMONY
CASE NO. CR 12-00792 YGR (NC)

Confrontation Clause) (internal citation and quotation marks omitted); *United States v. Mejia*, 597 F.3d 1329, 1339 (D.C. Cir. 2010) (explaining that, "because [the expert witness] was properly qualified, [defendant's] two hearsay objections to [the expert's] testimony are without merit"); *Hankey*, 203 F.3d at 1169 (explaining that, despite having accumulated "street intelligence" from hearsay, gang expert was entitled to testify based on years of experience and special knowledge).

Judge Alsup likewise rejected a similar *Crawford* challenge to gang expert testimony in a relatively recent racketeering case. *See United States v. Diaz*, 2006 WL 2699042, at *5 (N.D. Cal. Sept. 19, 2006) ("While the government's experts' opinions may rely, in part, on prior interviews and, thus, out-of-court statements, this will not violate the Confrontation Clause, *Crawford*, or the hearsay rule.").

The Second Circuit's decision in *United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008) does not alter the law at all, particularly in this Circuit.[7]  In any event, Defendants misread the case, which does not add anything to their argument. The error in *Mejia* was not that an expert witness relied upon hearsay to formulate his opinions. Rather, the expert witnesses in *Mejia* had communicated unvarnished hearsay *directly* to the jury outside of his own opinions. *See id.* at 197–99 (holding that expert testimony recounting custodial statements was improper because the statements were not subjected to any further analysis and were introduced to the jury simply for the truth of the matter asserted). The Second Circuit's 2008 decision is simply inapposite to the expert testimony proffered here. In fact, Post-*Mejia* (after October 6, 2008) district courts in the Second Circuit have continued to allow broad law enforcement expert testimony regarding the origins, existence, history, structure, rules, rituals, operations, and activities of racketeering enterprises. *See*, *e.g.*, *United States v. Uvino*, 07-CR-725-JBW (E.D.N.Y. Dec. 3, 2008); *United States v. Prisco*, 08-CR-885 (NRB) (S.D.N.Y. Apr. 14, 2009).

In fact, in the separate re-trials of the *Mejia* defendants after the Second Circuit reversed their original convictions, the district court allowed expert testimony regarding the history, structure, symbols, rules, practices, and tattoos of MS-13, over the defendants' objections. *See*, *e.g.*, *United States*

---

[7] *Cf. United States v. Kamahele*, 748 F.3d 984, 999 (10th Cir. 2014) ("The Defendants' reading of *Mejia* is overly broad. And even if this reading of *Mejia* were correct, we would be required to apply our own precedents, which have upheld expert testimony similar to Officer Merino's.").

*v. Rubi-Gonzales*, 03-CR-851-ADS, at 14, 102–37 (E.D.N.Y. July 16, 2009); *United States v. Castro*, 03-CR-851-ADS, at 333, 341–365 (E.D.N.Y. Sept. 29, 2009). In a pre-trial order in connection with one of those cases, Judge Spatt expressly recognized *Mejia*, before concluding that the wide-ranging expert testimony of FBI Special Agent Tariche was still admissible. *See United States v. Castro* 03-CR-851-ADS, at 26–29, 34 (E.D.N.Y. Sept. 15, 2009) ("In conclusion, I find that the testimony of Special Agent Reynaldo Tarcihe, based on his experience, based on his investigation, based on his examination of the video, arrest, searches, over a long period of time, has put him in position to be an expert on the MS-13 gang. The matters on which he testified at this hearing are admissible at the trial. Namely: One, the organization of the MS-13 gang; the hierarchy of the MS-13 gang; the membership of the MS-13 gang; the clique; the universal meeting; and the explanation of any code name; and the explanation of any code words can be testified to by Special Agent Tariche.").

Here, the Gang Experts will rely on hearsay only to the extent that interviews or phone calls helped to inform their expert opinions. The expert testimony will not be "merely repackaged testimonial hearsay;" rather the testimony will be "an original product" based on the Gang Experts' extensive professional experience, which happens to include third-party conversations. *Vera*, 770 F.3d at 1239. Further, the Gang Experts themselves will be subject to cross-examination and, to the extent hearsay evidence is reasonably relied upon by the Gang Experts, the Court can give a limiting instruction to the jury. *See United States v. W.R. Grace*, 504 F.3d 745, 759 n.7 (9th Cir. 2007). Thus, Defendants' hearsay and *Crawford* objections to the proposed gang expert testimony must be rejected.

### 3. The Proffered Testimony Does Not Constitute Improper Opinion on Mental State

Defendant Henry Cervantes briefly suggests that the proffered gang expert testimony somehow constitutes an improper opinion regarding the ultimate fact of mental state or condition barred by Federal Rule of Evidence 704. Cervantes Mot. at 6–7; Supp. Mot. at 8–9. That is simply not the case.

Federal Rule of Evidence 704(b) provides: "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone."

None of the proffered Gang Experts will provide an opinion on the *mens rea* of any particular defendant. Rather, Mr. Garrow will testify about the history, structure, membership requirements, practices, rules, hierarchy, imagery, signing, and colors of the *Nuestra Familia*. Sergeant Livingston will testify about his expert opinion regarding the history and nature of the conflict between "Federal" and "State" members of *Nuestra Familia*, the impact that the sale of drugs has on interstate commerce, and the make-up of *Norteño* street gangs. And Mr. Feeney will testify about the methods used by members of the *Nuestra Familia* to communicate among themselves in code and provide his interpretation of certain coded words.

Thus, the proposed expert testimony does not run afoul of the ultimate issue prohibition set forth in Rule 704. *See United States v. Gomez*, 725 F.3d 1121, 1128 (9th Cir. 2013) ("The expert testimony here did not violate Rule 704(b) because the prosecutor's questions only evoked expert testimony as to Agent Banos' experience with drug traffickers and not any explicit opinion of Defendant's state of mind or knowledge of his transportation of drugs.") (internal citation and quotation marks omitted).

### 4.     The Proffered Testimony Will Assist the Jury

Defendant Larez argues that the expert testimony violates Federal Rule of Evidence 702(a) because such testimony will not assist the trier of fact. Here, Defendant Larez specifically attacks Mr. Feeney's interpretation of *Nuestra Familia*'s coded messages, *see* Larez Mot. at 13–18, while also claiming "all three gang experts propose testimonies discussing *Nuestra Familia* and *Norteno* [sic] violent proclivities," and that "[t]hese opinions centering on violent proclivities will not assist the jury," *id.* at 28. Defendant Larez further argues that expert testimony discussing *Nuestra Familia*'s gang structure will be similarly useless to the jury. *Id.* But the defendant misses the point.

Federal Rule of Evidence 702(a) provides: "A witness who is qualified as an expert . . . may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized

knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." In other words, the expert opinion must be relevant. *See Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997).

The proffered gang expert testimony is plainly relevant in a RICO/VICAR prosecution, as it will help the jury to better understand complex and esoteric subject matters not within the grasp of an average person. Indeed, without Mr. Feeney's expertise in deciphering the *Nuestra Familia* code, Defendants' hidden messages would be rendered nonsensical. For example, Mr. Feeney will explain *Nuestra Familia* members use female nicknames to refer to one another; they refer to themselves in third person; they add flourishes to letters to make them appear to be love letters; or they use one-for-one coded words and phrases – a gang's squad might be referred to as a "baseball team" – all to disguise the meaning of their telephone and written communications.[8] *See* Second Expert Disclosure, Exhibit A, pp. 1, 3.

The Ninth Circuit has expressly recognized these types of well-informed interpretations of coded words as the sort of expert opinion that is allowed under the Federal Rules of Evidence. *See Vera*, 770 F.3d at 1241 ("It is neither novel nor unusual for law enforcement officers to interpret the meaning of phone calls recorded as part of a narcotics investigation. Drug jargon is well established as an appropriate subject for expert testimony and investigating officers may testify as drug jargon experts who interpret the meaning of code words used in recorded calls.") (citing *United States v. Bailey*, 607 F.2d 237, 240 (9th Cir. 1979)). Mr. Garrow and Sergeant Livingston's expert testimony regarding the origins, history, structure, rules, rituals, practices, symbols, purpose, and operations of the *Nuestra Familia* enterprise will be similarly useful and relevant to the jury. *See Hankey*, 203 F.3d at 1169–70. Defendant's FRE 702(a) argument must therefore be rejected.

---

[8] Contrary to Defendants' suggestion that such terms are "clear statements," Larez Mot. at 16, the meaning of these coded words, in context, is far from clear to the untrained ear.

### 5. The Proffered Testimony is Neither Unfairly Prejudicial Nor Needlessly Cumulative

Defendant Larez raises FRE 403 objections to the proffered gang expert testimony. Specifically, he argues the expert testimony will be unduly prejudicial, *see* Larez Mot. at 12–13; 29–31, and unnecessarily cumulative, *see id.* at 31–32.[9] Neither of these general objections, however, warrant the exclusion or limitation of the proffered gang expert testimony.

The Federal Rules of Evidence provide: "The court *may* exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added). In other words, since "[r]elevant evidence is inherently prejudicial[,] . . . it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *Hankey*, 203 F.3d at 1172 (quoting *United States v. Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983)).

Defendant identifies no unfair prejudice or cumulative evidence which outweighs, let alone *substantially* outweighs, the probative value of the proffered expert testimony described above and in the First and Second Expert Disclosures. Instead, Defendant Larez relies on inapposite case law and speculation. To the extent an actual FRE 403 issue arises at trial, which the Government does not expect to occur, this Court is well-suited to address such matters if and when they take place. Defendant's FRE 403 arguments are without merit, and should be rejected at this stage.

### 6. The Gang Experts Are Permitted to Testify as Fact Witnesses

Finaly, Defendant Larez objects to the proffered testimony because he contends the experts cannot testify as both fact and expert witnesses. As a preliminary matter, the United States only foresees calling Mr. Feeney and Sgt. Livingston as potential fact witnesses, and the anticipated fact testimony

---

[9] In this vein, Defendant Henry Cervantes also mentions Federal Rule of Evidence 404(b) as a possible ground to limit or exclude the proffered gang expert testimony in the introduction of his motions. *See* Cervantes Mot. at 1 ("All three proposed experts are being objected to under F.R.E. 403, but Mr. Garros and Sgt. Livingston especially are also addressing propensity evidence under F.R.E. 404(b)."); Supp. Mot. at 2 ("[T]he Cervantes defense objected that these were . . . propensity evidence in violation of F.R.E. 404(b) . . . ."). As Defendant failed to perfect this argument in either motion, the Government cannot adequately respond to any allegations involving FRE 404(b).

will make up a small portion of the overall testimony. But, there is no prohibition against an expert testifying as a fact witness, as long as the procedure is managed and the jury is properly instructed. *See Vera*, 770 F.3d at 1238; *United States v. Anchrum*, 590 F.3d 795, 803–04 (9th Cir. 2009); *United States v. Alonso*, 48 F.3d 1536, 1540–42 (9th Cir. 1995).

In *Diaz*, for example, Judge Alsup permitted a law enforcement officer to testify as both an expert and fact witness, noting that defendant's objection was like "complaining that a treating physician should not be allowed to give expert testimony." 2006 WL 2699042, at *5–6. In *United States v. Cerna*, Judge Alsup similarly allowed Detectives Mario Molina and Dion McDonell to testify as both expert and fact witnesses. 08-CR-0730 WHA, Dkt. 951-2, at 27 (allowing testimony of Molina and McDonnell as gang experts, while emphasizing that "[*i*]*n no way does this order exclude fact testimony by these witnesses*") (emphasis in original). Indeed, so long as the expert testimony is clearly delineated from the fact testimony, a witness can generally testify in both capacities. *See Anchrum*, 590 F.3d at 803–04 (holding that district court did not err by allowing agent to testify as both expert witness and fact witness in light of break in testimony between each phase of testimony and the prosecution punctuating the transitions by stating "I'd like to shift gears here . . . .").

In the event a gang expert is asked to testify as a fact witness[10], the United States will advise the Court in advance, and the examining prosecutor will stop before soliciting fact answers so the Court can instruct the jury. Defendants will have ample opportunity to cross-examine the experts in both capacities. *See United States v. Valle-Martinez*, 336 Fed. App'x 720, 723 (9th Cir. 2009) (unpublished) ("Although testimony in dual capacities can in some circumstances raise concerns of jury confusion, . . . [t]he district court took adequate precautions to minimize any possible prejudice, including limiting the scope of expert testimony, instructing the jury regarding the weight it was to give such testimony, and

---

[10] For instance, Mr. Feeney's expertise is based largely on the hundreds of hours he has spent with members of the *Nuestra Familia*, among them Andrew Cervantes. It is not surprising that this lengthy contact also led to Mr. Feeney observing incriminating statements. During his time with Andrew Cervantes, the latter solicited Mr. Feeney's participation in a scheme to smuggle drugs into prison. Mr. Feeney refused. But, Cervantes's statements are admissible at trial as co-conspirator statements and admissions.

ensuring that defense counsel had a full opportunity to cross-examine [the expert]"). These safeguards will prevent the jury from improperly assigning greater weight to the fact testimony of experts.

### C. A Daubert Hearing Is Not Necessary

In the alternative, Defendants argue the Court should order a *Daubert* hearing. *See* Larez Mot. at 34. As noted above, however, *Daubert*'s inquiry has been held not to apply to gang expert testimony of the type that the Government intends to elicit from the Gang Experts. *See Hankey*, 203 F.3d at 1169. To the extent Defendants intend to question the Gang Experts' qualifications, they can conduct *voir dire* at trial, outside the presence of the jury. Further, Defendants will be afforded ample opportunity to cross-examine any experts, including the Gang Experts, about opinions or methodology used in formulating those opinions at trial. There is no need to expend the Court's time and resources on another *Daubert* hearing.

## III. Conclusion

For the foregoing reasons, Defendants' motions to limit or exclude the gang experts' testimony should be denied.

Dated: November 2, 2015

Respectfully submitted,

BRIAN J. STRETCH
Acting United States Attorney

 */s/ Joseph M. Alioto Jr.*
Joseph M. Alioto, Jr.
Assistant United States Attorney

JAMES M. TRUSTY
Chief
Organized Crime and Gang Section

 */s/ Robert S. Tully*
Robert S. Tully
Jennifer R. Sykes
Trial Attorneys
Organized Crime and Gang Section