**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>Plaintiff,<br><br>v.<br><br>**HENRY CERVANTES**, *et al.*,<br><br>Defendants. | Case No.: 12-CR-0792 YGR<br><br>**PRETRIAL ORDER NO. 14 REGARDING SELECT PRETRIAL MOTIONS AND MECHANICS OF JURY SELECTION**<br><br>RE: DKT. NOS. 841, 845, 848, 849, 895, 897, 924, 960, 991, 992 |

On March 18, 2016, the Court held a regularly scheduled pretrial conference. Joseph M. Alioto, Jr., Robert S. Tully, and William Frentzen appeared on behalf of the United States. John T. Philipsborn appeared on behalf of Henry Cervantes ("H. Cervantes"), Brian H. Getz appeared on behalf of Alberto Larez ("Larez"), Randy Sue Pollock appeared on behalf of Jaime Cervantes ("J. Cervantes"), and K. Alexandra McClure appeared on behalf of Andrew F. Cervantes ("A. Cervantes"). All of the defendants listed were present. Based on the filings in this case, the arguments of the parties, and Good Cause showing, the Court issues the following Orders.

A. **OUTSTANDING *IN LIMINE* MOTIONS**

1. **Motion *in Limine* to Exclude Low Copy Number DNA Testing Results and Weak Statistics, and Request for *Daubert* Hearing (Docket No. 895)**

As the Court noted on the record, the Court conducted a *Daubert* hearing on October 13, 2015, and the issues raised by J. Cervantes in this motion were not raised prior to that hearing. J. Cervantes confirmed that he withdrew his request for a *Daubert* hearing in Docket No. 917. To supplement the Court's analysis of the issues raised, the government shall file by March 25, 2016 the SERI protocols used and referenced by the parties.

2. **A. Cervantes's Motion to Suppress Statements Made During Custodial Interrogation (Docket No. 924)**

The referenced motion is **GRANTED** with respect to the government's case in chief. The Court will entertain a request by the government to use the statements for impeachment purposes, at which time A. Cervantes may renew his motion.

3. **H. Cervantes's Motion for Permission to File a Motion to Exclude Acts Recently Noticed under Federal Rule of Evidence 404(b) (Docket No. 991)**

The referenced motion is **GRANTED**. In addition, this Court's Pretrial Order No. 13 did not undertake analyses of a category of evidence, which the Court has deemed to fall within the scope of Rule 404(b). Remaining at issue with regard to Rule 404(b) are three alleged acts: (i) a 2008 "riot" among inmates at FCI Florence in Colorado, (ii) an assault on an inmate by H. Cervantes on August 14, 2013, while in custody in this case, and (iii) an assault in 2011 on a woman to punish her boyfriend for violating gang rules. If the government wishes to admit evidence of such acts, the Court **ORDERS** that the government file a motion to do so under Rule 404(b) within seven days of the date this order issues. Opposition shall be due seven days after the government's filing. In addition, the Court **ORDERS** the government to include in that motion, and any opposition to address, the admissibility of evidence of the stabbing involving Skip Villanueva at issue in H. Cervantes's motion *in limine* number 17, Docket No. 845, in light of the Court's analysis in Pretrial Order No. 13.

4. **H. Cervantes's Motion for an Order Directing Government Agencies to Address or Waive *Touhy* Issues in relation to Defense Subpoenas (Docket No. 992)**

In light of recent discussions with the government, H. Cervantes advised the Court that the referenced motion was withdrawn. Larez and J. Cervantes had joined the motion (Docket Nos. 1002, 1015). Given that the underlying motion was withdrawn, the Court deems the joinders resolved. To the extent any issues remain, the defendants shall file a new motion prior to the next pretrial conference.

5. **Motions to Require that H. Cervantes Submit to a Mental Evaluation (Docket No. 897) and regarding Potential Defenses (Docket Nos. 841, 848)**

H. Cervantes filed a motion *in limine* "to make sure that the Court puts in place a decision making structure which will permit the defense to develop defenses that are permitted given the nature of the charges in this case." (Docket No. 841 at 1.) The government filed an opposition to that motion (Docket No. 852). Also, the government filed its own motion *in limine* to preclude a "diminished capacity" defense and request a *prima facie* showing for any other defenses (Docket No. 848). The government based its argument to preclude the defense on the lack of a connection between reports H. Cervantes had provided regarding his mental health and the *mentes reae* required for the charges in this case, arguing that the evidence without that connection would be irrelevant and prejudicial to the government. (*See id.* at 2.) The government also sought for H. Cervantes to make a *prima facie* showing for any "voluntary intoxication" defense. (*See id.* at 2–3.) Then, at a hearing on the motions *in limine*, the government argued that the Court should preclude as a matter of law any evidence of H. Cervantes's defenses relating to mental state. The parties filed additional papers on the issue of whether to preclude any defenses as a matter of law. The Court limits this order to that issue, **DENIES** the government's motion to preclude as a matter of law any such defense **WITHOUT PREJUDICE** to the government moving to exclude evidence of particular defenses after an examination of H. Cervantes (Docket No. 848), and **DENIES WITHOUT PREJUDICE** as premature H. Cervantes's motion *in limine* number 12 (Docket No. 841). The Court **RESERVES** ruling on the government's motion to require that H. Cervantes submit to an evaluation pursuant to Rule 12.2, given that the parties again will meet and confer regarding potential compromise on a proposed form of order (Docket No. 897).

The government seeks to preclude H. Cervantes's potential defenses under state law. (*See* Docket No. 896 at 3–4 ("The VICAR murder counts are predicated on California law.").)[1] The

---

[1] In *United States v. Houston*, 648 F.3d 806 (9th Cir. 2011), two defendants sought duress instructions for one predicate act under Pennsylvania law, a second predicate act under California law, and "for the VICAR murder and RICO conspiracy charges." *See id.* at 815. The Ninth Circuit explained which law applied to each: "For the substantive RICO charge, state law governs the substantive defenses to the predicate racketeering acts. . . . Federal law governs the availability of the defense for the RICO conspiracy and VICAR murder charges." *Id.* at 815–16 (citations

3

government has argued that as a matter of law H. Cervantes should not be allowed to present a defense rooted in evidence of his mental health and/or intoxication on the bases that such defenses would be irrelevant and prejudice the government's case "by offering emotionally charged facts unrelated to any legitimately recognized defense." (*See* Docket No. 848 at 2.) H. Cervantes counters that "[t]he defenses at issue apply to any charged conspiracy count or racketeering act allegation that relates to Counts 5 and 6 [in the Third Superseding Indictment ("3SI")—the Coolidge Avenue VICAR murder charges," (Docket No. 893 at 2), and "to any of the conspiracies allegedly entered into by [H.] Cervantes, particularly if the [government argues] that [H.] Cervantes was conspiring with others in the commission of the VICAR murders charged in Counts 5 and 6," (*id.*). H. Cervantes provided to the government and the Court documents relating to potential post-traumatic stress disorder, learning disorders, "some diagnosed brain dysfunction," head trauma, and drug and alcohol use. (*Id.* at 3.)

By way of background, under the VICAR statute, "[w]hoever, . . . for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, . . . any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished . . . ." 18 U.S.C. § 1959(a); *see Slocum*, 486 F. Supp. 2d at 1119 n.9; *see also United States v. Banks*, 514 F.3d 959, 968 (9th Cir. 2008) (explaining that "if the reach of this element were not cabined in some way, prosecutors might attempt to turn every spontaneous act or threat of violence by a gang member into a VICAR offense"). The standard instruction for proof of the VICAR murder charges (Counts Five and Six), will require the government to prove that (1) an enterprise existed; (2) "the enterprise engaged in racketeering activity;" (3) "the defendant [committed] [*specify crime of violence*] as defined in [*specify jury instruction stating all elements of predicate crime of violence*];" and (4) "the defendant's purpose in [committing] [*specify crime of violence*] was to gain entrance to, or to

---

omitted). "Because the VICAR allegations . . . charge as their predicate acts violations of the federal murder statute, 18 U.S.C. § 1111, federal law governs defenses raised against them." *United States v. Slocum*, 486 F. Supp. 2d 1104, 1113 (C.D. Cal. 2007). The court assumed without deciding that a duress defense was available under the relevant state or federal law, and concluded that the evidence did not support an instruction in that case. *See Houston*, 648 F.3d at 816.

4

maintain, or to increase [his] position in the enterprise[.]" *See* 9TH CIR. MANUAL OF MODEL CRIMINAL JURY INSTRUCTIONS 8.151 Violent Crime in Aid of Racketeering Enterprise (18 U.S.C. § 1959). The Ninth Circuit permits intoxication and "diminished capacity" defenses in certain circumstances. *See id.* 6.9 Intoxication—Diminished Capacity. "Diminished capacity is directly concerned with whether the defendant possessed the ability to attain the culpable state of mind which defines the crime." *United States v. Twine*, 853 F.2d 676, 678 (9th Cir. 1988); *see United States v. Christian*, 749 F.3d 806, 811–14 (9th Cir. 2014). Further, "diminished capacity, like voluntary intoxication, generally is only a defense when specific intent is at issue." *Twine*, 853 F.2d at 679; *see also United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1196 (9th Cir. 2000) (en banc) ("The practical difference between these two levels of mental culpability is that certain defenses, such as voluntary intoxication and subjective mistake of fact, can negate culpability only for specific intent crimes."); *id.* ("In general, 'purpose' corresponds to the concept of specific intent, while 'knowledge' corresponds to general intent. A person who causes a result prohibited by common law or statute is said to have acted purposely if he or she consciously desired that result, whatever the likelihood of that result ensuing from his or her actions." (citations omitted)).

To the extent the government seeks to incorporate state law in the charges in the 3SI, H. Cervantes asserts that the Court should permit possible defenses to state law elements. (*See* Docket No. 841 at 3–5.) The Court agrees. The 3SI VICAR murder counts noted above allege murder in violation of California law. (3SI ¶¶ 36–39.)[2] California's instruction for "First or

---

[2] *Cf. United States v. Barbeito*, 2010 WL 2243878, at *22 (S.D.W. Va. June 3, 2010) ("VICAR makes it an offense, for example (and assuming the other elements are present), to commit murder 'in violation of the laws of any State.' The state law offense defines murder in the sense that it supplies the statutory text and essential elements of murder. Murder for the purposes of a VICAR charge is whatever the state law defines it to be."); Dep't of Justice Manual Comment. § 9-110.000A VIOLENT CRIMES IN AID OF RACKETEERING: A MANUAL FOR FEDERAL PROSECUTORS ("[W]hen a Section 1959 charge is based upon a violation of state or federal law that satisfies the generic definition of the predicate violent crimes listed in Section 1959, the government must prove, and the jury must be instructed on, all the requisite elements of that state or federal offense." (footnote omitted)); *United States v. Garcia-Santana*, 774 F.3d 528, 534–37 (9th Cir. 2014) (explaining the methodology to determine a generic definition of an offense).

1  Second Degree Murder With Malice Aforethought" requires that the government prove, in relevant
2  part: "1. The defendant committed an act that caused the death of [another person]; [AND] 2. When
3  the defendant acted, [he] had a state of mind called malice aforethought." Judicial Council Of
4  California Criminal Jury Instruction ("CALCRIM") 520. "There are two kinds of malice
5  aforethought, express malice and implied malice. Proof of either is sufficient to establish the state
6  of mind required for murder." *Id.* "The defendant acted with *express malice* if [he] unlawfully
7  intended to kill." *Id.* (emphasis in original).[3] "California law, in turn, recognizes three theories of
8  *second degree* murder." *People v. Swain*, 909 P.2d 994, 997 (Cal. 1996) (emphasis in original).
9  "The first is unpremeditated murder with express malice." *Id.* at 998; *see id.* ("The second . . . is
10 implied malice murder."); *id.* ("The third theory is second degree felony murder.").

   Further, California law on available defenses distinguishes between "diminished capacity"
and "diminished actuality," and permits a defendant to establish the latter. *See People v. Cortes*,
121 Cal. Rptr. 3d 605, 633 (Cal. Ct. App. 2011). As set forth in CALCRIM 3428:

> You have heard evidence that the defendant may have suffered from a mental
> (disease[,]/ [or] defect[,]/ [or] disorder). You may consider this evidence only for
> the limited purpose of deciding whether, at the time of the charged crime, the
> defendant acted [or failed to act] with the intent or mental state required for that
> crime.

CALCRIM 3428. In addition, similar to the discussion of federal law above, California law
permits "[e]vidence of voluntary intoxication . . . solely on the issue of whether or not the
defendant actually formed a required specific intent, or, when charged with murder, whether the
defendant premeditated, deliberated, or harbored express malice aforethought." Cal. Penal Code
§ 29.4(b); *see* CALCRIM 625; *see also* CALCRIM 626 ("If someone dies as a result of the actions
of a person who was unconscious due to voluntary intoxication, then the killing is involuntary
manslaughter.").

---

[3] "The defendant acted with *implied malice* if: 1. [He] intentionally committed an act; 2. The natural and probable consequences of the act were dangerous to human life; 3. At the time [he] acted, [he] knew [his] act was dangerous to human life; AND [he] deliberately acted with conscious disregard for [human] life." *Id.*

The government argues that, to prove its VICAR murder charges, it only must prove as a predicate a form of second degree murder, not a form of murder requiring "deliberation" or "premeditation," and that, as a result, any defense that would negate only "deliberation" or "premeditation" should be precluded. (*See* Docket No. 896 at 4–6.) Because of how the government charged this case and intends to proceed at trial, however, the Court agrees with H. Cervantes that the potential defenses the government seeks to preclude as a matter of law could be admissible. In *Houston*, the Ninth Circuit affirmed a denial of a second degree federal murder instruction for a predicate offense for a VICAR murder charge. *See Houston*, 648 F.3d at 819. The court considered such a request by the defendants to be "not a typical lesser-included-offense instruction; rather, it is a lesser-included-*predicate*-offense instruction." *Id.* The court concluded that the defendants were not entitled to the instruction and that the jury finding that the predicate offense was second degree murder would not necessarily result in acquittal. *See id.* at 819–20; *see also id.* at 819 ("The district court rejected this request, holding that [the defendants] would have been guilty of VICAR murder even if the jury had found second degree murder as the predicate offense instead of first degree murder."). Here, by contrast, the 3SI alleges in the VICAR murder count that H. Cervantes "unlawfully, willfully, and intentionally did murder Victim-1, in violation of California Penal Code, Sections 187, 188, 189, 21a, and 664." (3SI ¶ 37; *see also id.* ¶ 39 (repeating the same for Victim-2).) And as a Special Sentencing Factor under the RICO conspiracy charge in this case, the 3SI alleges that H. Cervantes "unlawfully, willfully and intentionally and with deliberation and premeditation, did kill, with malice aforethought Victim-1 in violation of California Penal Code, Sections 187, 188, and 189." (3SI ¶ 24; *see also id.* ¶ 25 (repeating the same for Victim-2).) Moreover, the government indicates in its supplemental brief that it will seek to admit evidence that H. Cervantes "carefully deliberated, planned, and executed the murders, . . . ." (Docket No. 896 at 9.) Thus, because the government alleges unlawful, willful, and intentional murder under California law, alleges that H. Cervantes acted with deliberation, and will seek to admit evidence of deliberation to prove its case, the Court concludes that the government's argument to preclude H. Cervantes's potential defenses relating to mental state is without merit.

Separately, to the extent the government's arguments relate to the factual bases for H. Cervantes's potential defenses, the Court declines to address those issues in advance of further development of the record and the parties' submission of a revised proposed order regarding an examination pursuant to Rule 12.2. Moreover, to the extent the government argues in the alternative for particular jury instructions, this argument is premature and **DENIED WITHOUT PREJUDICE**.

In sum, the Court **DENIES** the government's motion to preclude as a matter of law any of H. Cervantes's potential defenses **WITHOUT PREJUDICE** to the government moving to exclude evidence of particular defenses after an examination of H. Cervantes (Docket No. 848), and **DENIES WITHOUT PREJUDICE** as premature H. Cervantes's motion *in limine* number 12 (Docket No. 841).

### 6. Motions regarding Substantive Jury Questionnaire (Docket Nos. 849, 960)

Having considered the parties' proposed jury questionnaires, and having discussed them at a the February 12, 2016 pretrial conference, the Court drafted a questionnaire and provided it to the parties on February 25, 2016, in advance of the March 18, 2016 pretrial conference. (*See* Docket No. 957.) The draft questionnaire included a question regarding cooperators, thereby resolving the government's motion *in limine* number 2 (Docket No. 849). On February 29, 2016, H. Cervantes filed a response, requesting modifications to the questionnaire and limitations on the manner in which prospective jurors would be excused (Docket No. 960). Those requests are **GRANTED IN PART**. The Court will add questions to the questionnaire regarding the burden of proof and the right to remain silent. The request for additional questions regarding testimony by certain categories of individuals is withdrawn. The request regarding the excusing of jurors is addressed below.

///

///

///

B. **MECHANICS OF JURY SELECTION**

As the Court advised the parties, the return date for the time screening questionnaires ("TSQs") sent to prospective jurors is set for **MARCH 25, 2016**. The TSQs require prospective jurors to respond under penalty of perjury. The jury administrator is ordered to sort the TSQs into three Categories, namely whether the prospective juror is: (i) Available; (ii) Excused pursuant to General Order No. 6, Article 9, subsections 1, 2, 3, 4, and 6, and Article 10; or (iii) Requesting hardship on grounds not specified in Category (ii). To date, the Court has issued 3000 TSQs to seat a jury of 12 members and 6 alternates.

The Court advised the parties that, based on these sworn questionnaires, it will grant requests for undue hardship by either excusing or postponing service when jurors have significant medical problems which cannot be accommodated, significant out-of-town plans made *prior* to the receipt of the summons, or other unique circumstances which would warrant classification for undue hardship. Financial hardship will not qualify as a "unique circumstance."

The Court will rule on remaining requests either (a) after review, and possible stipulation, by counsel for the parties or (b) during an in-court session. With respect to those identified for review by counsel, the parties shall meet and confer in-person to review the TSQs on **APRIL 8, 2016** in Courtroom One after our next regularly scheduled pretrial conference. The undersigned judge will not be present, nor shall the defendants. To the extent possible, counsel shall provide the Court with a list identifying any prospective juror they stipulate should be excused on the basis of the hardship request articulated. Information from the TSQs shall not be shared with any other person, including the defendants. Counsel are advised that they will be exposed to personal juror information to which they are not entitled. Thus, the Court hereby **ORDERS** that no party shall take any notes of any information from the prospective jurors' TSQs.

The summons shall require the appearance of the venirepersons on **MONDAY, APRIL 18, 2016**, or such other time and date as may be indicated to them by telephone or website notice via the jury administrator. Those excused due to hardship, however, will be notified that they need not

appear. Two hundred randomly chosen venirepersons shall be selected and called in as follows: A first group of one hundred randomly chosen venirepersons, not previously excused, shall be assembled in Courtroom One to be sworn and admonished by the Court ("Primary Panel"). They shall then complete, under oath, a substantive questionnaire (not the TSQ). To the extent any in that pool had requested to be excused on grounds of hardship, but were not excused, the Court will entertain hardship requests orally that day in open court. The parties are not entitled to *voir dire* directly on hardship issues, but the Court will entertain topics in advance, given routine concerns such as financial hardship, child care issues, and travel plans.

On **TUESDAY, APRIL 19, 2016**, a second group of the next fifty randomly chosen venirepersons, not previously excused, shall be assembled in Courtroom One to be sworn and admonished by the Court ("Second Panel"). They shall then complete, under oath, a substantive questionnaire (not the TSQ). To the extent any in that pool had requested to be excused on grounds of hardship, but were not excused, the Court will entertain hardship requests orally that day in open court. A final group of fifty randomly chosen venirepersons, not previously excused, shall remain on call until the jury and alternates are selected.

To assist with jury selection, the Court will provide the parties with more than ample opportunity to review the questionnaires. Thus, after completing the substantive questionnaires, responding venirepersons will be allowed to leave, subject to returning, at the earliest, on the following **MONDAY, APRIL 25, 2016**. The jury administrator will make copies of the substantive questionnaires and provide one copy each to the government and to each defendant. Counsel may make one copy of the questionnaires per attorney on the case, plus one. Once the jury is empaneled, all questionnaires must be shredded or returned to the jury administrator, and counsel shall certify the same to the Court. Counsel shall advise the Court in writing of the name of any non-attorney member of the trial team to whom access to the questionnaires has been given.

Venirepersons will have a unique identification number and, at all times, will be referenced by that designation. The substantive questionnaires also will be completed using that designation.

However, counsel will be provided with a list to identify the names of the venirepersons. This list shall not be copied and shall not be brought into the courtroom, but may be used during the pre-review of the substantive questionnaires. In accordance with Model Rule of Professional Conduct 3.5(b) and Formal Opinion 466, counsel "may review a juror's or potential juror's Internet presence, which may include postings by the juror or potential juror in advance of and during the trial, but . . . may not communicate directly or through another with a juror or potential juror." Counsel "may not, either personally or through another, send an access request to a juror's electronic social media. An access request is a communication to a juror asking the juror for information that the juror has not made public and that would be the type of ex parte communication prohibited by Model Rule 3.5(b)." Formal Opinion 466.

If possible, counsel may meet and confer in-person and, to the extent possible, agree on venirepersons that may be stricken for cause on the basis of the substantive questionnaires. With respect to the Primary Panel, counsel shall provide the stipulated list to the Court by **12:00 NOON, FRIDAY, APRIL 22, 2016** (so that the jury administrator may notify only the eligible candidates to appear for *voir dire* the following Monday). With respect to the Second Panel, counsel shall provide the stipulated list to the Court by **8:00 A.M., MONDAY, APRIL 25, 2016.**

Beginning on **MONDAY, APRIL 25, 2016, at 8:00 A.M.**, counsel and the defendants shall be present in Courtroom One for jury selection. The Court shall seat a jury of twelve (12) jurors plus six (6) alternates. Pursuant to Federal Rule of Criminal Procedure 24(b)(2), the government is entitled to six (6) peremptory challenges and the defendants collectively are entitled to ten (10) peremptory challenges. The Court exercises its discretion and grants an additional four (4) peremptory challenges to be exercised collectively by the defendants. Pursuant to Federal Rule of Criminal Procedure 24(c)(4)(C), the Court also orders an additional three (3) peremptory challenges per side to be used solely for purposes of selecting alternates. Any peremptory challenges left over from Rule 24(b)(2) challenges may not be used for alternates.

11

The Court anticipates that the selection process shall proceed as follows: The first fifty (50) of the Primary Panel, randomly selected and not otherwise excused, shall return to Courtroom One to be examined principally by the Court. Before providing the opportunity for any challenges to be used, the first forty-two (42) venirepersons listed on the random list will be subject to *voir dire*. These 42 will be resorted by their numeric designation so as to mask from these prospective jurors their position on the random list. They will then be called into the jury box in three (3) sets of fourteen (14). The parties will be given that portion of the random list showing the position of each. The random list will not be provided for subsequent prospective jurors.

After the Court's *voir dire* of each set, the parties will be allowed supplemental *voir dire*, the primary focus of which should be to support for-cause challenges. The Court understands that initial rounds always take longer than remaining rounds. Presumptively, each party will be allowed approximately twenty (20) minutes for the first round. Once this process is repeated for each set, the jurors will be excused from the courtroom so that challenges can be asserted. Each side shall assert any challenges for cause and exercise their peremptory challenges. Peremptory challenges shall be exercised in the following sequence:

- Prosecution First
- *Defense First, Second, and Third*
- Prosecution Second
- *Defense Fourth, Fifth, and Sixth*
- Prosecution Third
- *Defense Seventh, Eighth, and Ninth*
- Prosecution Fourth
- *Defense Tenth, Eleventh, and Twelfth*
- Prosecution Fifth
- *Defense Thirteenth*
- Prosecution Sixth
- *Defense Fourteenth*

A pass counts as a challenge. Two consecutive passes by both sides (prosecution and defense) waives all further peremptory challenges. To the extent required, *voir dire* will continue each day with the balance of the pool until the main jury and alternates are selected. *Batson* motions must be

made in a timely fashion, namely before the challenged juror is excused. Argument on the same shall always be made outside the presence of the jury panel.

C. **TRIAL SCHEDULE**

In Pretrial Order No. 10, the Court inadvertently indicated that it would not be in session on July 1, 2016. The Court will not be in session on July 8, 2016, and will be available on July 1, 2016. That said, the Court will consider requests not to be in session on July 1, 2016, if counsel already have made plans on the basis of the previous scheduling order.

This Order terminates Docket Numbers 841, 848, 849, 924, 991, 992.

**IT IS SO ORDERED**.

Date: March 24, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**