1  BRIAN J. STRETCH (CABN 163973)
   United States Attorney
2
   DAVID R. CALLAWAY (CABN 121782)
3  Chief, Criminal Division

4  JOSEPH M. ALIOTO JR. (CABN 215544)
   WILLIAM FRENTZEN (LABN 24421)
5  Assistant United States Attorneys

6       1301 Clay Street, Suite 340S
        Oakland, California 94612
7       Telephone: (510) 637-3680
        Fax: (510) 637-3724
8       Joseph.Alioto@usdoj.gov

9  ROBERT S. TULLY (DCBN 467446)
   Trial Attorneys, Organized Crime and Gang Section
10
        1301 New York Avenue NW
11      Washington, D.C. 20005
        Telephone: (202) 616-8389
12      Fax: (202) 514-3601
        Robert.Tully@usdoj.gov
13
   Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 12-00792 YGR |
| Plaintiff, | UNITED STATES' RESPONSE TO DEFENDANT ANDREW CERVANTES' MOTION *IN LIMINE* NO. 3 |
| v. | |
| ANDREW FRED CERVANTES, | |
| Defendants. | |

The United States respectfully submits this opposition to the defendant Andrew Cervantes'

Motion *In Limine* No. 3 (dkt. 1023).

**INTRODUCTION**

The United States intends to introduce a number of statements at trial, as statements offered

against a party opponent (Fed.R.Evid. 801(d)(2)(a)), co-conspirator statements (Fed.R.Evid.

UNITED STATES' RESPONSE TO ANDREW CERVANTES MOTION IN LIMINE NO. 3
1

801(d)(2)(E)), or possibly statements against interest (Fed.R.Evid. 804(b)(3)). For the most part, the defendant's motion does not identify or challenge any specific statement; rather, it seeks to exclude wide swaths of evidence while arguing broadly that the government is unable to prove the identities of certain declarants or that the declarants were "knowing participants" in the conspiracy. None of these arguments has merit. Each statement the United States seeks to admit is undeniably a co-conspirator statement made in furtherance of the alleged conspiracy. Ample evidence will be offered at trial to implicate the defendants in the conspiracies charged. These proofs will easily satisfy the preponderance of the evidence standard necessary to admit the statements.

## APPLICABLE LAW

A statement by a co-conspirator during the course and in furtherance of the conspiracy is not hearsay and is admissible against other members of the conspiracy. Fed.R.Evid. 801(d)(2)(E); *United States v. Crespo de Llano*, 838 F. 2d 1006, 1017 (9th Cir. 1987). In order to introduce a statement of a co-conspirator against a defendant, the government need only establish by a preponderance of the evidence the existence of the conspiracy, the defendant's connection to it, and that the statement was made during and in furtherance of the conspiracy. *Bourjaily v. United States*, 107 S. Ct. 2775, 2778 (1987).

Once the existence of the conspiracy is established, "the prosecution need only show slight evidence connecting the defendant to the conspiracy." *United States v. Mason*, 658 F. 2d 1263, 1269 (9th Cir. 1981). A trial court has discretion to vary the order of proof in admitting a co-conspirator's statement; the statement may be admitted prior to the presentation of independent evidence of the conspiracy. *United States v. Loya*, 807 F. 2d 1483, 1490 (9th Cir. 1987); *United States v. Arbelaez*, 719 F. 2d, 1453, 1460 (9th Cir. 1983).

In *Bourjaily*, the United States Supreme Court held "there is little doubt" that the co-conspirator's statements can "themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy." *Bourjaily*, 107 S. Ct. at 2778.

In determining whether a statement was made "in furtherance of" a conspiracy, the focus is not on its actual effect in advancing the goals of the conspiracy, but on the declarant's intent in making the statement. *United States v. Zavala-Sierra*, 853 F.2d 1512, 1516 (9th Cir. 1988). "When a declarant

seek[s] to induce [the listener] to deal with the conspirators or in any other way to cooperate or assist in achieving the conspirator's common objective, the declaration may be admissible [as a co-conspirator statement]. Statements concerning activities of the conspiracy, including future plans, also may become admissible when made with such intent." *United States v. Foster*, 711 F. 2d 871, 880 (9th Cir. 1983).

Each of the following categories of statements is considered to be "in furtherance" of the conspiracy and therefore admissible:

- Statements made to induce enlistment or further participation in the group's activities;
- Statements made to prompt further action on the part of conspirators;
- Statements made to "reassure" members of a conspiracy's continued existence;
- Statements made to allay a co-conspirator's fears;
- Statements made to keep co-conspirators abreast of an ongoing conspiracy's activities;
- Statements made to "higher ups" of the group.

*United States v. Yarbrough*, 852 F.2d 1522, 1535-1536 (9th Cir. 1988).

## ARGUMENT

The United States will offer into evidence a number of categories of co-conspirator statements, including prison correspondence, material seized from Andrew Cervantes, and material seized from other prisoners. Each of these categories is discussed more fully below. The United States will also seek to introduce recordings of telephone calls and material seized from the home of Alberto Larez. Because neither of these last two categories of documents are subject to the defendant's motion, they will not be addressed. Other materials noticed in the United States' letters to the defendants in August and September, 2015 may also be introduced.[1]

**I.      Each of the Statements Offered Into Evidence Is From A Co-Conspirator**

To introduce a co-conspirator statement, the United States is only required to show three things: (1) the existence of the conspiracy; (2) the defendant's "slight" connection to it; and (3) that the

---

[1] Throughout his brief, the defendant argues the United States' co-conspirator statement notice was inadequate. The United States gave written notice of the proffered statements to the defendants on August 21, 2015. It provided the same notice to Andrew Cervantes on September 9, 2015 – before he was charged. No defendant has ever challenged the adequacy of the United States' notice or requested this Court to require greater specificity.

statement was made in furtherance of the conspiracy. These factors need only be proven by a preponderance of the evidence in order to support the statements' admission into evidence. In this case, the issue will be straight-forward. Evidence of the conspiracy will be shown through crimes committed on behalf of the *Nuestra Familia* enterprise by Henry Cervantes, Alberto Larez, and Jaime Cervantes – acts that include murder, arson, assault, and robbery. Evidence of Andrew Cervantes's connection to the racketeering enterprise will be more than "slight." His own statements, directing Alberto Larez and Henry Cervantes, will implicate him in the conspiracy. Once this is established at trial, the sole question for the Court will be whether the co-conspirator statements offered were made "in furtherance" of the conspiracy. These proofs will easily satisfy the preponderance of the evidence standard.

In his brief, however, the defendant attempts to insert new elements, based on incorrect citations to law, which infect all of his arguments. He first claims "the government must establish that the declarant knowingly participated in the conspiracy." (Def. Mot. at 4 (emphasis added).) In fact, there is no such requirement. The defendant writes that "[o]nce an agreement is shown, the government must also produce evidence of a defendant's *and the declarant's* connection to the conspiracy *sufficient to prove knowing participation*." (Def. Mot. at 4 (emphasis added).) In support of this, the defendant cites *United States v. Dunn*, 564 F.2d 348, 357 (9th Cir. 1977). But, this statement exists nowhere in the *Dunn* decision. *Dunn* does not address whether the government must prove that the *declarant* "knowingly participated" in the conspiracy. In fact, *Dunn* does not discuss co-conspirator statements at all; Rule 801(d)(2)(E) is not even mentioned. Rather, the cited passage discusses the appellate sufficiency of evidence standard with the Court holding that in order to convict a defendant of conspiracy at trial, evidence beyond a reasonable doubt need only establish the defendant's slight connection to the conspiracy. *Id*. at 357.

The defendant also relies on *United States v. Castaneda*, 16 F.3d 1504, 1507 (9th Cir. 1994) to support his contention that "[t]he government must establish that the declarant knowingly participated in a conspiracy." (Def. Mot. at 4.) This is another overreach. As the cited passage makes clear, "the accused's [not the declarant's] knowledge of and participation in an alleged conspiracy with the putative coconspirator are preliminary facts that must be established, by a preponderance of the evidence, before the coconspirator's out-of-court statement can be introduced into evidence." *Castaneda*, 16 F.3d at

1507. Thus, there is no legal requirement that the United States demonstrate the "declarant's knowing participation."

Moreover, the connection between the declarant and the conspiracy will be satisfied once the statement itself is shown to be "in furtherance" of the conspiracy – by a mere preponderance of the evidence. As the Supreme Court emphasized, "there is little doubt" that the co-conspirator's statements can "themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy." *Bourjaily*, 107 S. Ct. at 2778.

But, the defendant claims that "[t]o establish that the declarant knowingly participated in a conspiracy, 'the government cannot rely solely on the alleged co-conspirator statements themselves.'" (Def. Mot. at 4.) The *Castaneda* case is again cited in support, but that rule is not in the decision. It may be true that the United States must "produce some independent evidence which, viewed in light of the coconspirator statements, establishes the requisite connection between *the accused* and the conspiracy." *Castaneda*, 16 F.3d at 1507. But there is no authority requiring the United States to prove with independent evidence that the *declarant* "knowingly participated" in the conspiracy.

While the Ninth Circuit has held that "it is essential that there be evidence regarding who made the statement," *United States v. Mouzin*, 785 F.2d 682, 693-94 (9th Cir. 1986), that holding has not been interpreted as requiring the specific identity of the declarant. In *United States v. Gil*, 58 F.3d 1414, 1420 (9th Cir. 1995), the Court required only that "the author of the ledger and the party against whom they are offered were members of the conspiracy." Both *Mouzin* and *Gil* dealt with drug ledgers found in the defendants' homes. In *Mouzin*, there was no evidence the ledgers were conspiratorial, other than their presence in the defendant's home, so the statements were excluded. In *Gil*, the Court admitted the ledger where it was found in the defendant's home *and* entries in the ledger corresponded to surveilled activities. *Gil*, 58 F.3d at 1420. In other words, the contents of the *Gil* writings were considered by the Court in determining whether the documents were made by a co-conspirator.

Other circuits have so held. "Absolute proof of authorship is not essential to the invocation of the coconspirator exception." *United States v. McGlory*, 968 F.2d 309, 335 (3d Cir. 1992); *United States v. Helmel*, 769 F.2d 1306, 1313 (8th Cir. 1985); *United States v. De Gudino*, 722 F.2d 1351, 1356 (7th Cir. 1983). "What is essential is that the government show that the unknown declarant was more

likely than not a co-conspirator." *Helmel*, 769 F.2d at 1313.

## II. Statements By Other Co-Conspirators

Aside from statements made by the defendants themselves – which the defendant does not appear to contest – the United States also intends to introduce statements made by uncharged co-conspirators.

### A. Prison Correspondence

#### 1. Skip Villanueva

Before he was sent to the maximum security prison in Florence Colorado, Skip Villanueva and Andrew Cervantes were the top "overseers" and decision-makers for the *Nuestra Familia*. The United States intends to introduce a number of statements made by Villanueva to Andrew Cervantes by letter, and statements made by Villanueva to Alberto Larez during various prison calls.

The defendant challenges the adequacy of proof that Villanueva participated in the charged conspiracy. This is one reason the video recording of Villanueva killing Peter Gutierrez should be admitted – to demonstrate Villanueva's connection to the charged conspiracy.

The defendant also argues the "purported authors" of Skip Villanueva's correspondence are from other "apparently real people" including Sylvia Griffith. (Def. Mot. at 7.) This is a red herring. Karen Bauer and Sylvia Griffith are two third-party intermediaries whose names will be addressed at trial. In an effort to avoid detection, the gang codes their letters by addressing them to women outside of prison and using language designed to disguise the correspondence as love letters. The third party intermediaries then forward the letters to other members of the gang.

For example, on July 18, 2011, the Bureau of Prisons intercepted an outgoing letter from Villanueva addressed to Karen Bauer. The letter was photocopied by law enforcement before being mailed out. The exact same letter was then intercepted in the incoming mail of Andrew Cervantes on September 4, 2011. See Exhibit A, *comparing* NF-000544 *with* NF-011190.

Moreover, the apparently "real" Sylvia Griffith wrote to Villanueva on October 17, 2011. Exhibit B, NF-021608. The letter is type-written, not hand written; it discusses quotidian topics unrelated to the gang business; and the letter is signed in a hand-writing style demonstrably different than the letters from Villanueva.

1    This use of third-party intermediaries was not limited to correspondence between Andrew
Cervantes and Skip Villanueva. For instance, on October 23, 2011, Andrew Cervantes wrote a letter
addressed to "Tony Martinez" at an address in Porterville, California. On December 4, 2011, the exact
same letter was then sent by "Tony Perez" from Porterville to NF member Michael Alvarez. See
Exhibit C, *comparing* NF -011221 *with* NF-019517.

This type of evidence, as well as contextual clues from the letters themselves, forms some of the
bases of John Feeney's opinions that Karen Bauer and Sylvia Griffith were third-party intermediaries for
written communications between Villanueva and Andrew Cervantes.

In addition to this evidence, handwriting comparisons during trial will show by a preponderance
of the evidence the similarity of the letters handwritten by Villanueva and Andrew Cervantes.

### 2. Leonard Vilches Correspondence

Andrew Cervantes ordered the murder of Tobias Vigil in correspondence sent to Leonard
"Manny" Vilches. Evidence at trial will show that a *Nuestra Familia* "constitution" was found in the
cell of Leonard Vilches, linking him to the enterprise.

Andrew Cervantes communicated with Leonard Vilches through a number of intermediaries,
including C. Vilches, Jessica Beluneva, and Jessica Aguirre. Based on the coding within the letters,
John Feeney will provide his opinion that these communications were authored by Leonard Vilches.

### 3. Carlos L. Correspondence

There are at least two letters from "Carlos L." to Andrew Cervantes, one of which discusses the
initiation of drug operations in Mexico on behalf of the gang. Carlos L.'s participation in the
conspiracies will be established through testimony, and by the letters themselves, which use the same
coded language for drugs as are used by other *Nuestra Familia* co-conspirators, including some of the
defendants in this case.

### 4. Ray Avalos, Nancy Hall, and Eddie Samora Correspondence

One letter each from Ray Avalos, Nancy Hall, and Eddie Samora will be offered into evidence.
Avalos' participation in the conspiracy will be shown through written statements of Andrew Cervantes,
who gave gang-coded orders to Avalos. Nancy Hall's letter includes the transmission of gang-related
business to Andrew Cervantes on behalf of another gang member, Michael Alvarez. Michael Alvarez's

participation in the conspiracy will be offered into evidence through testimony. Eddie Samora's participation in the conspiracy will be established through testimonial evidence.

### B. Material Seized from Andrew Cervantes' Property

#### 1. March 2015 Seizure

Approximately 98 pages of material were seized from Andrew Cervantes' property in March 2015 as he was preparing for his release. These items include lists of codes, a copy of the "Bad News List," a letter entitled "Back to Basics," Rules and regulations of the *Nuestra Familia*, and 11 handwritten pages.

All of these items were found in Andrew Cervantes' personal property. At least one of the items – the "Back to Basics" letter – is specifically referenced by Cervantes in his out-going mail as having been written by him. Many items are in Andrew Cervantes' handwriting. This includes the Back to Basics letter, one page of NF code, portions of the NF rules and regulations, and 11 handwritten pages. These facts are sufficient to identify the defendant as the author of the material. *Gil*, 58 F.3d at 1420 (evidence sufficient to connect written materials to defendant where drug ledger found at defendant's residence, entries corresponded to surveilled activities, and ledger attributed deliveries to a nickname associated with defendant).

The remaining materials should also be admitted as co-conspirator statements, even where the identity of the author is unknown. It is plain from the face of these materials – the gang's constitution, the gang's codes, the gang's hit list – that the author was a co-conspirator, and the government need only prove that by a preponderance of the evidence. This conclusion is further supported by the fact these materials were found in the property of Andrew Cervantes along with his other gang-related writings, indicating his adoption of the documents.

Finally, even if not admitted for the truth of the matters asserted, all of these materials can be admitted as verbal acts, evidence of the defendant's relationship to the *Nuestra Familia*, or proof of the existence of codes, constitutions, and the like.

#### 2. October 2010 Seizure

In October 2010, a Bad News List was found in Andrew Cervantes' property. Portions of the list appear to be in Cervantes' handwriting and should be admitted for the reasons stated above.

### C. Material Seized from Other Prisoners

#### 1. Cornelio Tristan Kite

On April 1, 2015, a handwritten kite was seized in the incoming mail of *Nuestra Familia* member Ernest Killinger. The kite was authored by Cornelio Tristan, one of the three *Nuestra Familia* "generals." Tristan's participation in the conspiracy, and his role as one of its top leaders, will be demonstrated through testimonial evidence. The kite discusses gang business, provides a new written code for communications, and lays out the hierarchy of gang members, listing Andrew Cervantes as a "Cat III" carnal, and Alberto Larez and Henry Cervantes as "Cat II" carnales.

#### 2. Bad News List seized from Robert Hanrahan's cell

The Bad News List found in Robert Hanrahan's cell will be offered for admission under the same theories discussed above.

#### 3. Document entitled "Thinking, Acting, Training With Precision" seized from property of Scott Gustin

A *Nuestra Familia* operations manual was found in the cell of Scott Gustin. The document includes a history of the *Nuestra Familia*. Since the document is plainly authored by a member of the conspiracy, it is an admissible co-conspirator statement.

#### 4. *Nuestra Familia* Constitution Seized from cell of Leonard Vilches

A *Nuestra Familia* Constitution was seized from the cell of Leonard Vilches, and it is admissible for the reasons outlined above.

#### 5. Documents Seized from Ray Avalos Cell

A variety of materials seized from Ray Avalos' cell will be offered into evidence. Each of these materials is written by a co-conspirator and is intended to direct actions of other *Nuestra Familia* members; each document is therefore a communication in furtherance of the conspiracy. These materials include:

- List of names, aliases and rank of members of *Nuestra Familia* – This "roster" of *Nuestra Familia* members, which lists the defendants, is written for the purpose of memorializing and acknowledging member power within the organization.

- Filters addressed "to all worthy fellow Norteños," "All N Soldados," and "Salutations" – These

filters, or gang "memoranda," are addressed to members of the enterprise from the leadership of the *Nuestra Familia* and are intended as directives of action to the members. Because these filters are from "main base (HQ)," the authors are co-conspirators.

- Educational Documents: "NF Category System and its Evolution," "Understanding our Core Concepts and Reasonings," and "Thinking, Acting, Training with Precision" – These documents, which reference "future lessons" and are otherwise intended for wide distribution within the gang, are educational and training materials intended to keep members abreast of the conspiracy's activities or enlist them in further participation. At least portions of one of these documents ("Thinking, Acting, Training with Precision") is identical to the document found in Scott Gustin's cell, further indicating it's intended wide distribution.

- Revised By-Laws, "14 Bonds," and "Yard Policies" – Rules and regulations of the *Nuestra Familia*, intended to guide members' behavior.

- Portions of document entitled "All members will work solely for this objective" – this document is created for distribution to "Familianos," members of the *Nuestra Familia* enterprise. The document includes a directive to "spot check" members for misconduct violations.

- Portions of a type-written document beginning "as the familia evolved" – This document appears to be a history intended for the education of members for the purpose of indoctrination of gang philosophy.

### III. Materials May Also Be Admitted Under Alternative Theories

In the alternative, most of the materials outlined above, particularly materials found in prisoner's cells, may be admitted for purposes other than the truth of the matters asserted. Codes, Bad News Lists, Constitutions, Bonds, Formats and other documents may be admitted not to show the truth of the writings, but the fact of their existence. As one example, a hit list might be introduced to show the fact that such a list exists and not whether a person on it has truly been targeted to be killed.

### IV. The Court May Delay Rulings Until Trial

The Court need not rule on the defendant's motion now. Rather, the Court may reserve ruling on statements until it has had an opportunity to hear evidence in support of the statements. Moreover, the Court has discretion to vary the order of proof in admitting co-conspirator statements; the statements

may be admitted prior to the presentation of independent evidence of the conspiracy. *Loya*, 807 F. 2d at 1490; *Arbelaez*, 719 F. 2d, at 1460.

## CONCLUSION

For the foregoing reasons, the motion should be denied.

Dated: March 31, 2016

Respectfully submitted,

BRIAN J. STRETCH
Acting United States Attorney

*/s/ Joseph M. Alioto Jr.*

JOSEPH M. ALIOTO JR.
WILLIAM FRENTZEN
Assistant United States Attorney

JAMES M. TRUSTY
Chief, Organized Crime Gang Section

*/s/ Robert S. Tully*

ROBERT S. TULLY
Trial Attorney