1   BRIAN J. STRETCH (CABN 163973)
    United States Attorney
2
    DAVID R. CALLAWAY (CABN 121782)
3   Chief, Criminal Division

4   JOSEPH M. ALIOTO JR. (CABN 215544)
    WILLIAM FRENTZEN (LABN 24421)
5   Assistant United States Attorneys

6        1301 Clay Street, Suite 340S
         Oakland, California 94612
7        Telephone: (510) 637-3680
         Fax: (510) 637-3724
8        Joseph.Alioto@usdoj.gov

9   ROBERT S. TULLY (DCBN 467446)
    Trial Attorneys, Organized Crime and Gang Section
10
         1301 New York Avenue NW
11       Washington, D.C. 20005
         Telephone: (202) 616-8389
12       Fax: (202) 514-3601
         Robert.Tully@usdoj.gov
13
    Attorneys for the United States of America
14
                    UNITED STATES DISTRICT COURT
15
                  NORTHERN DISTRICT OF CALIFORNIA
16
                         OAKLAND DIVISION
17
    UNITED STATES OF AMERICA,              Case No. 12-00792 YGR
18
             Plaintiff,                    UNITED STATES' MOTION FOR PRETRIAL
19                                         DETERMINATION ON ADMISSIBILITY OF
         v.                                FOUR CATEGORIES OF EVIDENCE, PER
20                                         PRETRIAL ORDER NO. 14.
    ANDREW FRED CERVANTES,
21                                         AND
             Defendants.
22                                         MOTION FOR RECONSIDERATION RE:
                                           LAREZ LOCKUP BEATING
23

24

25       In accordance with Pretrial Order No. 14 (dkt. 1028), the United States respectfully moves this

26   Court for a pretrial determination on the admissibility of four categories of evidence: (1) the stabbing of

27   Pete Gutierrez, (2) Henry Cervantes' assault on a prisoner in federal custody, (3) the 2008 Otero Bravo

28   riot, and (4) Alberto Larez's assault on Mondo's girlfriend in 2011.  In addition, the United States

UNITED STATES' MOTION FOR PRETRIAL DETERMINATION OF ADMISSIBILITY
                                          1

respectfully moves the Court to reconsider its prior ruling excluding evidence of the beating of A.O by

defendant Alberto Larez.

**APPLICABLE LAW**

1.   Racketeering Enterprise Evidence

Generally speaking, evidence of crimes that demonstrate a racketeering enterprise are admissible

to prove a RICO offense or a RICO conspiracy.  The Ninth Circuit has recognized the expansive nature

of admissible evidence to prove a racketeering enterprise, whether introduced against multiple

defendants or against a single defendant.  *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir.

2004) (denying severance of RICO defendants on the basis that "much of the same evidence would be

admissible against each of [the defendants] in separate trials").  Importantly, in *Fernandez*, the Ninth

Circuit quoted the following from the case of *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir.

1992):

> Proof of [RICO] elements may well entail evidence of numerous criminal
> acts by a variety of persons, and each defendant in a RICO case may
> reasonably claim no direct participation in some of those acts.
> Nevertheless, evidence of those acts is relevant to the RICO charges
> against each defendant, and the claim that separate trials would eliminate
> the so-called spillover prejudice is at least overstated if not entirely
> meritless.

*Id.* at 1242.

In the case relied upon by the Ninth Circuit, *DiNome*, the court held that "we note here that the

government must prove an enterprise and a pattern of racketeering activity as elements of a RICO

violation."  In *DiNome*, the RICO defendants claimed that they were entitled to severance, but the

Second Circuit upheld the joint trial on the basis of the lack of prejudice inherent in the nature of

proving a RICO case.  *Id.* at 843.  "[T]he evidence of numerous crimes, including the routine resort to

vicious and deadly force to eliminate human obstacles, was relevant to the charges against each

defendant because it tended to prove the existence and nature of the RICO enterprise . . . ."  *Id.*  "In

some cases both the relatedness and the continuity necessary to show a RICO pattern may be proven

through the nature of the RICO enterprise. . . .  We do not suggest that the defendant is to be held

accountable for the racketeering acts of others.  We simply note that such an association may reveal the

threat of continued racketeering activity and thereby help to establish that the defendant's own acts

constitute a pattern within the meaning of RICO." *Id.* (quoting *United States v. Indelicato*, 865 F.2d 1370, 1383-84 (2d Cir. 1989)). "*The evidence of the [enterprise]'s various criminal activities was, therefore, relevant to the RICO charges against each appellant* . . . because it tended to prove: (i) the existence and nature of the RICO enterprise and (ii) a pattern of racketeering activity on the part of each defendant by providing the requisite relationship and continuity of illegal activities."[1] *Id.* (emphasis added). *United States v. Coonan*, 938 F.2d 1533, 1559 (2d Cir. 1991) ("common sense suggests that the existence of an association-in-fact is often-times more readily proven by what it does, rather than by abstract analysis of its structure"), *quoted in Fernandez*; *see also United States v. Bonanno*, 467 F.2d 14, 17 (9th Cir. 1972) ("In conspiracy prosecutions, the Government has considerable leeway in offering evidence of other offenses").

Other Circuits are in agreement regarding the broad range of evidence that is admissible to prove a racketeering case – including evidence of uncharged murders. *United States v. Matera*, 489 F.3d 115, 120-21 (2d Cir. 2007) (admission of uncharged murders committed by members of the Gambino crime family to prove the RICO enterprise); *United States v. Baez*, 349 F.3d 90, 93-94 (2d Cir. 2003) (admitting evidence of sixteen uncharged robberies to establish the alleged enterprise and conspiracy); *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999) (admission of evidence that members of the Latin Kings street gang committed uncharged drug trafficking and crimes of violence on behalf of the Latin Kings "to prove the existence, organization and nature of the RICO enterprise, and a pattern of racketeering activity"); *United States v. Richardson*, 167 F.3d 621, 625-26 (D.C. Cir. 1999) (continuity may be established by the totality of all of the co-defendants' unlawful conduct); *United States v. Keltner*, 147 F.3d 662, 667-68 (8th Cir. 1998) (uncharged criminal conduct by coconspirator admissible to prove the enterprise); *United States v. Salerno*, 108 F.3d 730, 738-39 (7th Cir. 1997) (uncharged extortionate collections by defendants admissible to prove the enterprise); *United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997) (admission of evidence of uncharged murders committed by some defendants and other enterprise members to show the existence of the enterprise and acts in furtherance

---

[1]   In *DiNome*, the court did find that two defendants should have had certain counts severed, but that was as a result of the trial court granting a Rule 29 motion for judgment of acquittal at the conclusion of the government's case on the RICO count.  Those two defendants are, therefore, irrelevant to this issue.

UNITED STATES' MOTION FOR PRETRIAL DETERMINATION OF ADMISSIBILITY

1    of the conspiracy); *United States v. Krout*, 66 F.3d 1420, 1425 (5ᵗʰ Cir. 1995) (admission of uncharged

2    murders committed by the defendants was not prejudicial when admitted to establish that murder and

3    violence were part of the enterprise's objectives and manner and means); *United States v. DiSalvo*, 34

4    F.3d 1204 (3ʳᵈ Cir. 1994) (upholding admission of defendant's uncharged acts to establish the existence

5    of the enterprise and the defendants' participation in and knowledge of the enterprise); *United States v.*

6    *Gonzalez*, 921 F.2d 1530, 1545-47 (11ᵗʰ Cir. 1991) (uncharged crimes by defendant and other

7    conspirators admissible to prove the enterprise and continuity) (collecting cases).

8           Interestingly, in *DiNome*, the Second Circuit also went on to state that: "[p]resumably, a RICO

9    defendant could stipulate that the charged RICO enterprise existed and that the predicate acts, if proven,

10   constituted the requisite pattern of racketeering activity.  The evidence of crimes by others might then be

11   excluded, and the defense would stand or fall on the proof concerning the predicate acts charged against

12   the particular defendant."  *DiNome*, at 844.

13          If the defendants do not want evidence presented on the existence of their overall enterprise, they

14   could stipulate to its existence pursuant to the law cited above, and the government would simply set out

15   to prove their participation and involvement in the racketeering conspiracy.  Absent such stipulation, the

16   evidence sought is properly admissible to prove the racketeering enterprise.

17          2.   Inextricably Intertwined Evidence

18          In the event that some evidence is deemed not to prove the enterprise, it likely will be admissible

19   as evidence that is intrinsic or inextricably intertwined with the charges in the Third Superseding

20   Indictment.  Such evidence is not character evidence, it is admissible to prove the charges themselves.

21   "Evidence of prior bad acts may be admitted 'for the purpose of providing the context in which the

22   charged crime occurred.'  Evidence of other acts that is 'inextricably intertwined' with the underlying

23   offense is admissible under Fed. R. Evid. 404(b).  Evidence is 'inextricably intertwined' if it 'constitutes

24   a part of the transaction that serves as a basis for the criminal charge,' or 'was necessary to . . . permit

25   the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'"

26

27   *United States v. Rrapi*, 175 F.3d 742, 748-49 (9ᵗʰ Cir. 1999) (quoting *United States v. Collins*, 90 F.3d

28

UNITED STATES' MOTION FOR PRETRIAL DETERMINATION OF ADMISSIBILITY

1420, 1428 (9th Cir. 1996); *United States v. Warren*, 25 F.3d 890, 895 (9th Cir. 1994); *United States v.*

*Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995)).

      3.  404(b) Evidence

      Finally, if evidence of prior bad acts is not admissible as enterprise proof or as intrinsic to the

charges, it can be admitted pursuant to Fed. R. Evid. 404(b).  That Rule provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the
> character of a person in order to show action in conformity therewith.  It
> may, however, be admissible for other purposes, such as proof of motive,
> opportunity, intent, preparation, plan, knowledge, identity or absence of
> mistake or accident.

      Importantly, and often ignored or overlooked by the courts and defendants, "Rule 404(b) *is a*

*rule of inclusion*. . . .  Unless the evidence of other crimes tends only to prove propensity, it is

admissible."  *United States v. Jackson*, 84 F.3d 1154, 1158-59 (9th Cir. 1996) (emphasis added); *see*

*also, United States v. Major*, 676 F.3d 803, 808 (9th Cir. 2012) ("Once it has been established that the

evidence offered serves one of the purposes authorized by Rule 404(b)(2), the only conditions justifying

the exclusion of the evidence are those described in Rule 403") (quoting *United States v. Curtin*, 489

F.3d 935, 944 (9th Cir. 2007) (en banc)).  Furthermore, where evidence of uncharged bad acts is

inextricably intertwined with the evidence of the charged crimes, it is not evidence subject to Fed. R.

Evid. 404(b) at all.  Therefore, if evidence of prior acts tends to prove a relevant fact other than character

it is admissible unless it is excluded under Rule 403.

## ARGUMENT

**I.**    **Pete Gutierrez Murder**

      On January 4, 2008, Skip Villanueva attacked Pete Gutierrez in the common area of a prison

block at USP Pollock.  Gutierrez was stabbed dozens of times before he succumbed to his wounds and

died later that evening.  Villanueva killed Gutierrez because he had continually violated gang rules.

Shortly after the murder, Villanueva pled guilty to the crime of murder and was sentenced to life

imprisonment.  At some point in late 2011, Villanueva was transferred from prison in Pollock to the

Supermax facility in ADX Florence, Colorado.

      The evidence of the Villanueva murder is directly probative of the elements the United States

1   must prove in Counts One, Two, and Three of the Third Superseding Indictment.  The United States

2   alleged the existence of a conspiracy from at least December 2003 to the present.  This conspiracy

3   consisted of, *inter alia*, agreements to commit murder on behalf of the *Nuestra Familia* enterprise.  The

4   evidence of the 2008 Gutierrez killing is therefore quintessential evidence in support of the charges: a

5   murder committed by a co-conspirator, indeed by one of the leaders of the enterprise.  The fact this

6   murder is not specifically charged makes no difference under the law, as cited above.

7       Second, the United States will offer evidence that part of Villanueva's motive in murdering Pete

8   Gutierrez was personal advancement within the *Nuestra Familia* enterprise.  Testimony will be

9   presented that high-ranking members of the gang are often required to have "a body," i.e. a murder

10  attributed to them.  The murder of Pete Gutierrez, along with Villanueva's measured reaction to his

11  conviction (he invited a life sentence in a letter written to his federal sentencing judge), will corroborate

12  this testimony.  This in turn is highly probative of the motive for Andrew Cervantes' ordering the

13  murder of Tobias Vigil.

14      Third, the United States must demonstrate at trial that Skip Villanueva is a co-conspirator.  His

15  communications with Alberto Larez and Andrew Cervantes will be offered into evidence as co-

16  conspirator statements.  In order to prove Villanueva's involvement in the alleged conspiracies (a fact

17  disputed by Andrew Cervantes in his Motion *In Limine* No. 3), the United States must be permitted to

18  offer its best evidence of Villanueva's connection to the charged conspiracies.

19      Fourth, the evidence of the murder is relevant to show the consequences of breaking gang rules.

20      Fifth, the evidence is inextricably intertwined with Andrew Cervantes' ascendency to the role of

21  sole overseer of the *Nuestra Familia*.  In mid-2011, Villanueva was transferred to ADX Florence and

22  became "incommunicado."  This transfer was the result of his conviction for killing Gutierrez.

23  According to gang rules, once a ranking member becomes "incommunicado," he must yield his power to

24  others who are in a position to lead the street operations of the gang.  Soon after Villanueva became

25  incommunicado, Andrew Cervantes wrote a filter (memorandum) to all norteños claiming himself as the

26  sole overseer and authority over the gang.  The Gutierrez murder and resulting incommunicado status of

27  Villanueva therefore play an essential role in the jury's understanding of the context of Andrew

28  Cervantes' leadership within the gang.

UNITED STATES' MOTION FOR PRETRIAL DETERMINATION OF ADMISSIBILITY

1    Finally, under Rule 404(b), this evidence would be relevant to showing Villanueva's knowledge

2    of gang rules, knowledge of the conspiracy, the intent to commit murder on behalf of the gang, the

3    preparation and plan of executing a member who fails to follow gang protocol, motive, and lack of

4    accident or mistake.

5    **II.    Henry Cervantes Lockup Beating**

6    Henry Cervantes' assault on a prisoner in federal custody is important evidence indicating his

7    adherence to gang principles and establishing the existence of the conspiracy as well as his participation

8    in it.  The man Cervantes assaulted was wearing a "protective custody" jail uniform which prisoners like

9    Henry Cervantes readily recognize.  In fact, the prisoner was in protective custody because of his sexual

10   preference.  The United States will introduce tape recorded statements of Henry Cervantes admitting

11   that gang rules proscribe homosexuality.  Testimonial evidence will similarly demonstrate these rules.

12   This violent attack was all but required of Cervantes.  If any other prisoner later learned that Cervantes

13   had been in a cell with a prisoner from protective custody and failed to attack him on sight, it would

14   have severely impacted Cervantes' reputation and diminished his role as a "carnal" within the *Nuestra*

15   *Familia*.  This is not propensity evidence.  It is offered to prove precisely the crimes that have been

16   charged.  The proffered evidence is probative of Henry Cervantes' active role in the enterprise and

17   active adherence to gang rules and is not unduly prejudicial.

18   In addition, the evidence is required to rebut the defendant's mental condition defense, which is

19   premised in part on the defendant's inability to control his emotions.  The video of the beating is strong

20   rebuttal evidence.  It shows Cervantes calmly placing his handcuffed wrists through the cell door.  Then,

21   the instant his cuffs are removed, Cervantes lunges onto his victim.  These actions demonstrate a cool

22   and calculating intention.  They reflect a man very much in control of his actions in the moments

23   immediately preceding a violent act.  The evidence will directly rebut the anticipated defense.

24   Finally, the evidence can be offered under Rule 404(b) to show intent (as described above),

25   knowledge (of gang rules), motive (attacking the man because of his status in protective custody, as

26   required by his gang's code of conduct), preparation and plan (the calculating way Cervantes lured his

27   victim and the correctional officer into believing he would not cause harm once his cuffs were removed,

28   similar to the way he lured his victims at the Coolidge apartments), and absence of mistake and lack of

UNITED STATES' MOTION FOR PRETRIAL DETERMINATION OF ADMISSIBILITY

accident.

**III.    Otero Bravo Riot**

Like his beating of the man in federal lockup, evidence of the Otero Bravo riot is relevant to show the existence of the enterprise and Henry Cervantes' role within it.  The United States anticipates the evidence will show that Henry Cervantes orchestrated this riot against rival sureños in the prison. That fact would make the evidence directly relevant to a charged crime: the existence of the enterprise, as well as existence of the conspiracies charged in Counts One, Two, and Three.

The Otero Bravo riot could also be admitted as inextricably intertwined to the charged counts or under Rule 404(b) for the same reasons the lockup beating would be admissible.

**IV.    Larez Beating of Mondo's Girlfriend**

The United States anticipates the evidence will show that Alberto Larez threatened to attack and did attack the girlfriend of one of his fellow gang members who owed Larez money.  This money came from proceeds derived from a robbery committed by Larez's crew.  One of the reasons Larez organized robberies was to enhance his standing within the organization.  He had direct ties to Skip Villanueva and Andrew Cervantes, who were directing his street operations from above.  Larez was expected to make money on behalf of the gang – largely through drug dealing, but also through robbery – and to filter proceeds to imprisoned gang members, including Andrew Cervantes.  The amount of money Larez generated for *Nuestra Familia* members directly reflected on his status within the gang.  The threat and attack on Mondo's girlfriend therefore was motivated by Larez's desire to enhance and protect his own reputation.

The evidence is therefore relevant to showing Larez's place within the *Nuestra Familia* organization and is directly probative of elements the United States must prove in Count One.

Additionally, the evidence could be admitted under Rule 404(b) as showing Larez's motive, intent, preparation and plan, and knowledge.

**V.    Larez Lockup Beating Of A.O.**

The United States hereby respectfully moves the Court to reconsider its prior rulings excluding evidence of the Larez lockup beating of A.O.

On January 28, 2016, the Court granted the defendant's motion to exclude evidence of the

1   lockup on the grounds that the United States had not identified the correct sponsoring witness in its

2   October 2, 2015 Witness List.  (Dkt. 909 at 15.)

3       On February 28, 2016, the United States moved the Court for leave to file a motion for

4   reconsideration.  (Dkt. 927.)  In that motion, the United States argued that the lockup beating was

5   directly relevant to the crime charged in Count One, the existence of the enterprise and Larez's

6   voluntary participation in it.  The United States further explained why the witness should not be

7   excluded merely because he was not included on the witness list filed seven months before trial.

8       At the hearing on February 12, 2016, the Court denied the United States' motion.  The Court

9   cited a security concern that might result from having a United States Marshal testify while his

10  colleagues simultaneously provide courtroom security.  (Hr'g Tr. 2/12/2016 at 46.)  The Court also

11  expressed skepticism that the Marshall had sufficient personal knowledge of the event to offer

12  competent testimony.  (*Id*. at 47.)

13      On February 17, 2016 the Court denied the United States motion in a written order "for the

14  reasons stated on the record."  (Dkt. 943 at 2.)

15      Notwithstanding that, at the February 12, 2016 hearing, the Court did not foreclose the

16  possibility of reconsidering its ruling.  (Hr'g Tr. 2/12/2016 at 46 ("If you've got the person who was

17  beat up who can actually tell us what the two of them were talking about, maybe I would reconsider it.")

18      The United States requests the Court to reconsider its ruling for two reasons.  First, the United

19  States Marshal who witnessed the events indeed does have personal knowledge and can competently

20  testify in this case.  The Court's ruling was therefore based on a misunderstanding of the proffered

21  evidence.  The Marshal would testify that as he approached the cell, he witnessed Larez beating the

22  other inmate.  As the officer approached, he heard Larez spontaneously state, in sum or substance, "You

23  shouldn't have put him in here.  Check his tats."  Larez's statement is admissible as a spontaneous

24  statement not the result of custodial interrogation.  This evidence is directly probative of the motive

25  behind Larez's attack; the inmate's tattoos could either indicate his association with a rival gang or his

26  dropout status as a former norteño.  Either way, the motive for the beating was gang related and shows

27  Larez's adherence to enterprise principles.

28      Second, the United States respectfully disagrees and, to the extent necessary objects, to the

UNITED STATES' MOTION FOR PRETRIAL DETERMINATION OF ADMISSIBILITY

1   Court's rationale for excluding the United States Marshal from the witness stand.  Since every federal

2   courtroom is protected by the United States Marshals Service, excluding one from the stand because his

3   colleagues are tasked with protecting jurors in the courtroom would effectively bar all U.S. Marshals

4   from serving as witnesses.  This cannot be the rule.

5          "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence,

6   (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is intervening change in

7   controlling law." *School Dist. No. 1J, Multnomah County, Oreg. v. AC&S, Inc.*, 5 F.3d 1255, 1263 (9th Cir.

8   1993), cited by *United States v. French*, 2010 WL2035143, *1 (9th Cir. May 21, 2010); *United States v.*

9   *Chant*, 1999 WL 1021460, *1 (9th Cir. Nov. 9, 1999) (both unpublished decisions in criminal cases

10  addressing motions for reconsideration). It is axiomatic that a district court may reconsider its own rulings

11  *sua sponte* at any time.

12                                              **CONCLUSION**

13          For the foregoing reasons, the United States' motions should be granted.

14

15  Dated: March 31, 2016                                    Respectfully submitted,

16                                                           BRIAN J. STRETCH
                                                             Acting United States Attorney
17

18                                                           */s/ Joseph M. Alioto Jr.*

19                                                           JOSEPH M. ALIOTO JR.
                                                             WILLIAM FRENTZEN
20                                                           Assistant United States Attorney

21                                                           JAMES M. TRUSTY
22                                                           Chief, Organized Crime Gang Section

23                                                           */s/ Robert S. Tully*

24                                                           ROBERT S. TULLY
25                                                           Trial Attorney

26

27

28