United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No.: 12-CR-0792 YGR-1 |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND/OR FOR DOUBLE JEOPARDY PROTECTION AGAINST RETRIAL** |
| v. | |
| **HENRY CERVANTES,** *et al.*, | **RE: DKT. NO. 1452** |
| Defendants. | |

Following the completion of a multi-defendant, twenty-one count racketeering conspiracy trial involving, among others, allegations of murder and drug trafficking, a jury convicted defendant Henry Cervantes of some counts and acquitted him of others. On Counts 5 and 6 for murder in aid of racketeering, the jury failed to a reach a verdict. In addition, while the jury convicted him of drug conspiracy in Count 21, it did not reach a decision on the weight of drugs.

Cervantes now brings this Motion to Dismiss and/or for Double Jeopardy Protection Against Retrial; Motion for Application of Collateral Estoppel and Issue Preclusion Based on Not Guilty Verdicts; Motion to Bar Retrial on Counts 5, 6, and 21. (Dkt. No. 1452 ("Motion").) The government has opposed the motion. (Dkt. No. 1492 ("Opp.").) The Court held oral argument on November 16, 2016.

Having carefully considered the papers submitted and the record in this action and the parties' oral arguments, and for the reasons set forth below, the Court **DENIES** both motions.[1]

---

[1] The Court **GRANTS** defendant's uncontested motion for permission to file an oversized reply brief. (Dkt. No. 1497.)

## I. BACKGROUND

### A. Indictment

On September 17, 2015, the government filed its Third Superseding Indictment against Henry Cervantes and others, charging racketeering offenses and conduct involving *Nuestra Familia*, a prison gang. (Dkt. No. 724 at 14–15 ("3SI").) The 3SI alleged in pertinent part as follows: "Henry Cervantes, a/k/a 'Happy,' is a *Nuestra Familia carnal* and has been a member of *Nuestra Familia* since at least in or about 1990. By in or about 2011, Henry Cervantes became the regiment commander for the *Nuestra Familia* in Oakland, California. Among other acts taken in furtherance of *Nuestra Familia*, on or about September 9, 2011, in the vicinity of Coolidge Avenue in Oakland, Henry Cervantes killed two individuals, one of whom had dropped out of the *Norteño* criminal organization, by stabbing them both with a kitchen knife. Henry Cervantes then enlisted *Norteño* Jaime Cervantes to destroy the evidence at the murder scene." (*Id.* at 18.) The government also alleged that the racketeering conspiracy included multiple acts involving, among other crimes, murder, robbery, and dealing in controlled substances. (*Id.* at 20–21.) The alleged purposes of the *Nuestra Familia* enterprise included, among other things, "[p]reserving and protecting the power, territory, reputation, and profits of *Nuestra Familia* through the use of intimidation, violence, threats of violence, assaults, and murder." (*Id.* at 18.)

The government charged defendant Henry Cervantes with ten counts: Count 1 (Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d)); Count 2 (Conspiracy to Commit Murder in Aid of Racketeering in violation of 18 U.S.C. § 1959(a)(5)); Count 3 (Conspiracy to Commit Assault with a Dangerous Weapon in violation of 18 U.S.C. § 1959(a)(6)); Count 4 (Use/Possession of Firearm in Furtherance of Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2); Count 5 (Murder in Aid of Racketeering of Victim-1 in violation of 18 U.S.C. §§ 1959(a)(l) and 2); Count 6 (Murder in Aid of Racketeering of Victim-2 in violation of 18 U.S.C. §§ 1959(a)(l) and 2); Count 7 (Conspiracy to Obstruct Justice in violation of 18 U.S.C. § 371); Count 9 (Obstruction of Justice in violation of 18 U.S.C. §§ 1512(c)(2) and 2); Count 10 (Use of Fire to Commit Felony in violation of 18 U.S.C. §§ 844(h) and 2); and Count 21 (Drug Conspiracy in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)). (*Id.* at 2–3.)

**B. Trial**

On April 26, 2016, a 12-member jury panel was sworn. Alternates were sworn the next day. On May 2, the parties gave opening statements and began presenting evidence. The government's case lasted approximately nine weeks. Henry Cervantes and the other defendants then presented their evidence. On July 5, all parties rested. From July 13 to 18, the Court instructed the jury and the parties gave their closing arguments. On July 18, the case was submitted to the jury.

**C. Jury Deliberations**

During its deliberations, the jury posed some questions to the Court that are relevant here:[2]

- **July 22 question from jury**: "If we agree on all charges except for 1 or 2 counts, will that result in a hung jury for the whole case?"
    - Response: "No." (Dkt. No. 1440 at 15, 14.)
- **July 26 question from jury regarding the Special Verdict Form**: "– Special Verdict form – Count 1 On Question 2, page 2 – to make a determination, is it required to tie Racketeering Conspiracy to the Murders?" (*Id.* at 13.)
    - Response from Court: "I don't understand your question. Can you be more specific?" (*Id.*)
    - Response from jury: "If we don't believe the murder was part of the racketeering conspiracy, can we answer <u>yes</u> to #2 pg. 2" (*Id.* at 12 (emphasis in original).)
    - The Court responded: "Jurors: If you do not believe that the murder referenced in Question (2) for Count 1, [page 2], was 'part of the racketeering conspiracy,' write 'Not Applicable' and Skip Question (3)." (*Id.* at 11.)
- **August 8 note from jury**: "We are deadlocked on <u>3 counts</u> and cannot agree to an amount on Count 21, Question 1" (*Id.* at 5 (emphasis in original).)
    - Response from Court: None.

---

[2] The Court notes that its responses to the jury were done after consultation with the parties.

3

**D. Jury Verdict**

On August 9, the jury returned a mixed verdict for Henry Cervantes, summarized as follows:[3]

| Count 1 (RICO Conspiracy) | Guilty |
|---|---|
| Count 2 (VICAR Murder Conspiracy) | Not Guilty |
| Count 3 (VICAR Assault Conspiracy) | Not Guilty |
| Count 4 (924(c) Firearm Possession) | Not Guilty |
| **Count 5 (VICAR Murder – Victim 1)** | **"undecided"** |
| **Count 6 (VICAR Murder – Victim 2)** | **"undecided"** |
| Count 7 (Obstruction Conspiracy) | Guilty |
| Count 9 (Obstruction) | Guilty |
| Count 10 (Use of Fire To Commit Felony) | Guilty |
| **Count 21 (Drug Conspiracy)** | **Guilty** |

The jury found the defendant "Guilty" of racketeering conspiracy in Count 1. However, in response to Count 1, Special Interrogatories (1) and (6), it answered "No" to the following questions:

(1) . . . . We, the Jury, further unanimously find that the defendant Henry Cervantes conspired to commit the murder of actual and suspected members of rival gangs, individuals suspected of cooperating with law enforcement, and individuals who defied the will of *Nuestra Familia,* in violation of California law as instructed earlier by the court.
\* \* \*
(6) . . . . We, the Jury, further unanimously find that the defendant Henry Cervantes conspired to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of methamphetamine and that it was reasonably foreseeable to the defendant Henry Cervantes that the conspiracy involved 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(l), and 84l(b)(l)(A).

With respect to Count 21 for drug conspiracy, the jury found Cervantes "Guilty," but was "undecided" as to the weight of drugs involved:

---

[3] The jury deliberated on July 18–29 and August 8–9, 2016, excluding weekends.

4

"We, the Jury, further unanimously find that it was reasonably foreseeable to the following defendant(s) that the conspiracy involved the distribution of and possession with intent to distribute the following quantity of a mixture and substance containing a detectable amount of methamphetamine:"

| | 500 Grams or More | 50 Grams or More | Less than 50 Grams |
|---|---|---|---|
| Henry Cervantes | "undecided" (handwritten) | | |

### E. The Instant Motion

The government currently intends to retry Cervantes on Counts 5, 6, and the drug weight allegation appended to Count 21. (Motion at 5.) Defendant has filed the instant motion arguing that (i) the Double Jeopardy Clause of the U.S. Constitution bars retrial of the drug weight in Count 21; (i) the Double Jeopardy Clause bars retrial of Counts 5 and 6; and (iii) if the Court allows a retrial, then the Double Jeopardy Clause bars the presentation of evidence related to Counts 2 and 3 for which the jury acquitted defendant. The Court examines each of these arguments.

## II. LEGAL FRAMEWORK: DOUBLE JEOPARDY

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The guarantee against double jeopardy protects against (1) a second prosecution for the same offense after acquittal or conviction, and (2) multiple punishments for the same offense. *See Witte v. United States*, 515 U.S. 389, 395–96 (1995); *Staatz v. Dupnik*, 789 F.2d 806, 808 (9th Cir. 1986).

### A. Double Jeopardy: Claim Preclusion for "Same Offense"

The claim preclusion aspect of the Double Jeopardy Clause bars successive prosecutions for charges that are, for double jeopardy purposes, the same offense. *United States v. Dixon,* 509 U.S. 688, 696–98 (1993). In determining whether to characterize two charges as the "same offense" triggering double jeopardy, or as two separate offenses, courts use the definition set forth in *Blockburger v. United States*: "the test to be applied . . . is whether each provision requires proof of a fact which the other does not." 284 U.S. 299, 304 (1932). "Where each offense requires proof of at least one unique element, there are two offenses, but where all the elements of one crime are included in the definition of another crime, the two charges represent the 'same offense' under the

Double Jeopardy Clause." *Wilson v. Czerniak*, 355 F.3d 1151, 1154 (9th Cir. 2004). Conversely, the clause does not protect against prosecution for two different offenses. *See Custer v. Hill*, 378 F.3d 968, 972–73 (9th Cir. 2004).

A substantive crime and a conspiracy to commit that crime are not the same offenses for double jeopardy purposes. *See United States v. Felix*, 503 U.S. 378, 389–90 (1992); *United States v. James*, 109 F.3d 597, 600 (9th Cir. 1997). Accordingly, double jeopardy is not implicated by prosecuting a defendant on a RICO conspiracy count and then later for related substantive offenses. *See United States v. Saccoccia*, 18 F.3d 795, 797–800 (9th Cir. 1994).[4] When a defendant has been acquitted of the substantive crime, however, the collateral estoppel analysis discussed below may preclude use of overt acts of which the defendant has been acquitted in trial of a related conspiracy charge. *See James*, 109 F.3d at 600.

The Double Jeopardy Clause does not bar the retrial of a charge following a hung jury because the failure of the jury to reach a verdict means that jeopardy has not yet terminated. *See Richardson v. United States*, 468 U.S. 317, 324–35 (1984); *James*, 109 F.3d at 599.

### B. Double Jeopardy: Collateral Estoppel or Issue Preclusion

The collateral estoppel, or issue preclusion, aspect of double jeopardy "precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Yeager v. United States,* 557 U.S. 110, 119 (2009); *see also Ashe v. Swenson*, 397 U.S. 436, 445 (1970); *Lemke v. Ryan*, 719 F.3d 1093, 1099 (9th Cir. 2013); *James*, 109 F.3d at 600. Collateral estoppel means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe*, 397 U.S. at 443. A collateral estoppel determination involves a three-step analysis:

> First, the issues in the two actions are identified so that we may determine whether they are sufficiently similar and material to justify invoking the doctrine. Second, we examine the first record to determine whether the issue was fully litigated. Finally, from our examination of the record, we ascertain whether the issue was necessarily decided.

---

[4] The same rule applies when the predicate offense is a conspiracy. *See United States v. Luong*, 393 F.3d 913, 917 (9th Cir. 2004).

6

*James*, 109 F.3d at 600 (quoting *United States v. Schwartz*, 785 F.2d 673, 681 (9th Cir. 1986)). When an element of the crimes charged in successive prosecutions is identical, the "similar and material" prong is satisfied. *United States v. Ford*, 371 F.3d 550, 556 (9th Cir. 2004) ("objective activity" requirements under sections 21 U.S.C. §§ 856(a)(1) and (a)(2) are identical).

The determination of whether the issue was "necessarily decided" turns on whether an issue of fact or law was "actually litigated and determined by a valid and final judgment, and . . . is essential to the judgment." *Bobby v. Bies*, 556 U.S. 825, 834–35 (2009) (alteration in original) (internal quotations and citation omitted) (finding that the issue of petitioner's ineligibility for the death penalty due to mental retardation under *Atkins v. Virginia*, 536 U.S. 304 (2002) was not "necessary to the judgments affirming his death sentence" and therefore was not eligible for issue preclusion).

The earlier determination by a judge or jury must be given the most rational interpretation possible. *See United States v. Carbullido*, 307 F.3d 957, 961–62 (9th Cir. 2002) (judge's decision at bench trial finding defendant not guilty by reason of insanity of the one arson charged precluded a second prosecution for another arson in the string of nine arsons listed in the stipulation of facts upon which the judge's decision rested). The petitioner bears the burden of showing that the issue whose relitigation he wishes to foreclose in a second proceeding was actually decided in the first one, and that no rational jury could have grounded its verdict on an issue other than the one the petitioner seeks to foreclose. *Santamaria v. Horsley*, 133 F.3d 1242, 1246 (9th Cir. 1998) (en banc), *amended*, 138 F.3d 1280 (9th Cir. 1998); *see, e.g., Wilson v. Bellevue*, 554 F.3d 816, 829–30 (9th Cir. 2009) (acquittal on intentional murder theory did not demonstrate that the jury necessarily decided issues that would bar a later prosecution on a felony murder theory under Oregon law).

In conducting the issue preclusion analysis, the court should not consider hung counts, *i.e.*, counts on which the jury was unable to reach a verdict. *Yeager*, 557 U.S. at 120–22 (2009) (holding that in multiple-count case, "for double jeopardy purposes, the jury's inability to reach a verdict on the insider trading counts was a nonevent" for purposes of determining issue preclusive effect of acquittal on other counts).

The applicable standard of proof may determine whether collateral estoppel applies: An acquittal in a criminal case will not preclude the prosecution from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof. *Charles v. Hickman*, 228 F.3d 981, 986 (9th Cir. 2000).

**III. DISCUSSION**

    **A. Issue 1: Retrial of Count 21 Drug Amounts**

Defendant argues that the Double Jeopardy protection precludes the government from retrying the drug weight in Count 21 because the issue "has been determined by a unanimous verdict" in defendant's favor. (Motion at 23.) He argues under *Yeager* that the jury's response to Count 1, Special Interrogatory No. 6 determined this issue of ultimate fact by a valid and final judgment, and therefore it cannot be litigated again. In *Yeager,* the defendant was charged with stock fraud and insider trading in connection with the Enron scandal. The jury acquitted him on the fraud counts, but deadlocked on the insider trading counts. In holding that the defendant was entitled to invoke collateral estoppel, the Supreme Court stated: "[I]f the possession of insider information was a critical issue of ultimate fact in all of the charges against petitioner, a jury verdict that necessarily decided that issue in his favor protects him from prosecution for any charge for which that is an essential element." *See Yeager*, 557 U.S. at 123.

Here, the jury convicted defendant in Count 21 of conspiring to distribute methamphetamine. (Dkt. No. 1433, Special Verdict Form ("SVF") at 16.) However, the jury indicated that it was "undecided" as to each of the three amounts listed on the verdict forms (i.e., 500 Grams or More, 50 Grams or More, or Less than 50 Grams). (*Id.*) Separately, the jury responded "no" in response to Count 1, Special Interrogatory no. 6 ("Special Finding No. 6"), which queried if the jury did "unanimously find that the defendant Henry Cervantes conspired to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of methamphetamine and that it was reasonably foreseeable to the defendant Henry Cervantes that the conspiracy involved 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine . . . ." (SVF at 3.)

The parties agree that the verdict for Count 21 indicates that the jury was "undecided" as to the amount of the methamphetamine involved, but disagree as to the meaning of Special Finding No. 6. Defendant interprets the verdicts to mean that the jury actually determined, unanimously, that defendant had *not* conspired to distribute and possess with intent to distribute 500 grams of methamphetamine or more. (Motion at 6.) However, this is not necessarily so. As the government rightly points out, Special Finding No. 6 may be read to indicate that the jury did not reach a "unanimous" agreement on whether defendant conspired to distribute and possessed with intent to distribute methamphetamine in a reasonably foreseeable amount of 500 grams or more—in other words, the jury did not "unanimously" find either way.[5] *See United States v. Merlino*, 310 F.3d 137, 144 (3d Cir. 2002).

*Merlino*, a racketeering case, presented an issue similar to that at bar. In that case, a Pennsylvania jury convicted defendant Merlino for some racketeering counts, but indicated on its verdict sheet that other racketeering acts, including the murder of a particular individual, were "Not Proven." In response to a question from the jury as to whether "[i]f on a given racketeering act that has no bearing on the count decision we cannot come to a unanimous decision, is it within the law to unanimously decide that the act is 'not proven,'" the court had responded "yes." *See id.* at 140. After the trial, the government indicted Merlino in New Jersey for the same murder, and the defendant moved to dismiss the indictment arguing that the Pennsylvania jury's special verdict barred the indictment on collateral estoppel grounds. The Third Circuit affirmed the district court's denial of Merlino's motion, holding that the jury's vote was "ambiguous because we cannot tell from the face of the verdict sheet whether the vote was unanimously 'Not Proven' or whether the jury unanimously decided that they were unable to reach a unanimous decision as to 'Proven' or 'Not Proven,' *i.e.*, whether they were 'hung' on that issue." *Id.* at 143. Therefore, the defendant could not meet his burden of proving that the jury had rendered a final judgment in his favor in order to preclude the issue of his participation in the murder. *Id.*

Defendant's attempt to distinguish *Merlino* based on the fact that the verdict form here required a unanimous verdict as to Special Finding No. 6 is unpersuasive. A plain reading of the

---

[5] The Court notes that defendant did not object to the wording of the special interrogatory.

9

jury's response demonstrates an ambiguity as to whether they found unanimously that defendant had not conspired to distribute 500 grams or more of methamphetamine, or whether they could not make a finding unanimously either way. The Court "must give jury verdicts the most rational interpretation possible" and interpret the jury's answers to special interrogatories to be consistent with each other. *Carbullido*, 307 F.3d at 62; *Gallick v. Baltimore & O. R. Co.*, 372 U.S. 108, 119 (1963) ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." (internal quotation marks and citation omitted)). In reviewing the verdict based upon the applicable legal standard, the Court finds that the jury (i) did not enter any unanimous finding with respect to whether defendant had conspired to distribute 500 grams or more of methamphetamine, and, consistently, (ii) was "undecided" as to the amount of methamphetamine at issue in Count 21, even though they found him guilty.

Therefore, for purposes of the collateral estoppel analysis, although the government seeks to try the same drug weight issue in a future trial against Cervantes, and that issue was fully litigated in the first trial, the issue was not "necessarily decided" in defendant's favor. *See James*, 109 F.3d at 600. The jury did not determine an "issue of ultimate fact" regarding the weight of the methamphetamine by a valid and final judgment. *See Yeager*, 557 U.S. at 123. Accordingly, the Double Jeopardy doctrine does not serve to estop the government collaterally from retrying the drug weight in Count 21.

### B. Issue 2: Retrial of VICAR Murders (Counts 5 and 6)

Defendant next argues that the collateral estoppel doctrine precludes the government from retrying Count 5 (Murder in Aid of Racketeering of Renee Washington) and Count 6 (Murder in Aid of Racketeering of John Gilbert Navaerette) (collectively, the "Coolidge Killings"), for which the jury returned "Undecided" verdicts.

With respect to this argument, defendant focuses on the following jury verdicts: The jury found defendant "guilty" with respect to Count 1 (Racketeering Conspiracy). (SVF at 2.) However, in Count 1, Special Interrogatory No. 1 querying whether it did "unanimously find that the defendant Henry Cervantes conspired to commit the murder of actual and suspected members of rival gangs, individuals suspected of cooperating with law enforcement, and individuals who

10

defined the will of *Nuestra Familia*, in violation of California law as instructed earlier by the court," the jury responded "No." ("Special Finding No. 1"). (*Id.*) In separate questions appended to Count 1, the jury found that questions of whether Cervantes committed the September 9, 2011 murder of Renee Washington (Victim – 1)" and "John Gilbert Navaerette (Victim – 2)," were "Not Applicable" to its decision as to Count 1. (*Id.* at 2, 3.) In addition, the jury acquitted defendant of Counts 2 (Conspiracy to Commit Murder in Aid of Racketeering) and 3 (Conspiracy to Commit Assault with a Dangerous Weapon in Aid of Racketeering). (*Id.* at 7.)

Based on these jury verdicts, defendant argues under *Yeager* and *Ashe* that the jury has decided an "issue of ultimate fact" by a valid and final judgment, and therefore, that issue cannot be litigated again in retrying Counts 5 and 6. *See Ashe*, 397 U.S. at 443. Specifically, defendant argues that the jury found that defendant did not form the conspiratorial intent that was part of the VICAR motive in Counts 5 and 6. Put another way, defendant argues the following: The racketeering acts appended to Count 1, as well as Counts 2 and 3, all required proof of racketeering purpose. This was the same enterprise-related purpose charged in the 3SI for Counts 5 and 6. At trial, the government argued for all of the racketeering acts appended to Count 1, as well as for Count 2, 3, 5, and 6, that the enterprise-related purpose was demonstrated by an agreement to act according to enterprise rules that required murder under specific circumstances ("VICAR Purpose"). When the jury (i) answered "No" in Special Finding No. 1 regarding a unanimous finding that defendant conspired to commit murder, and (ii) issued "Not Guilty" verdicts on Counts 2 and 3, they rejected the VICAR Purpose of agreement to murder and assault. Thus, defendant argues, because the jury has decided the VICAR purpose issue in defendant's favor, and VICAR purpose is an essential element of Counts 5 and 6, the government cannot retry the issue to sustain convictions for Counts 5 and 6.

The Court disagrees. Defendant's argument is only plausible if viewed in isolation. Many actions, not just the murders of Washington and Navaerette, could have formed the basis of the guilty verdict on Count 1. With regard to Count 1, the jury instructions list *eighteen* (18) different racketeering activities that could have formed the basis for convicting Cervantes on this Count. (Dkt. No. 1437 ("Jury Instructions") at 3). Contrary to defendant's argument, Special Finding No.

11

1 does not necessarily indicate that the jury found Cervantes to have no VICAR purpose with respect to the racketeering activities in Counts 5 and 6. The most unambiguous articulation of the jury's view on Counts 5 and 6 are those verdicts themselves.

Furthermore, defendant is incorrect that the issue of VICAR purpose was the same for Counts 1, 2, 3, 5, and 6. For Count 2, the jury instructions explained that an element of conspiracy to commit murder in aid of racketeering required a finding that "the defendant's *purpose in conspiring to commit murder* was to gain entrance to, or to maintain, or to increase his position in, the enterprise. (Jury Instruction No. 33 (emphasis supplied).) For Count 3, to convict Cervantes of conspiracy to commit assault with a dangerous weapon, the jury similarly had to find that "the defendant's *purpose in conspiring to commit assault with a dangerous weapon* was to gain entrance to, or to maintain, or to increase his position in, the enterprise. (Jury Instruction No. 34 (emphasis supplied).) Finally, for Counts 5 and 6, to convict defendant of murder in aid of racketeering, the jury had to find "defendant's *purpose in committing murder* was to gain entrance to, or to maintain, or to increase his position in the enterprise." (Jury Instruction No. 37 (emphasis supplied).) As the italicized portions of each instruction indicate, the purpose element for each Count was tied to the specific racketeering activity at issue. VICAR purpose was not a single element for which resolution on one count necessarily transferred to the others. Accordingly, even if the jury had decided that Cervantes possessed no VICAR purpose for Counts 2 and 3, this does not mean that the jury decided the element of VICAR purpose with respect to Counts 5 and 6.

Therefore, in terms of the three-step collateral estoppel analysis, (i) the "similar and material" prong is satisfied because the government seeks to prove the same issue of VICAR purpose with respect to Counts 5 and 6 on retrial, and (ii) the issue of VICAR purpose with respect to Counts 5 and 6 was fully litigated during the first trial, but (iii) the issue of VICAR purpose with respect to Counts 5 and 6 was not "necessarily decided" in Cervantes' favor. *See James*, 109 F.3d at 600. Accordingly, collateral estoppel does not bar the government from retrying him for Counts 5 and 6.

Defendant argues that *Yeager* compels the opposite result. As previously discussed, in that case, the Supreme Court overturned the Fifth Circuit's decision that collateral estoppel did not bar a

retrial against Yeager on the hung insider trading counts. After reviewing the record, the Fifth Circuit initially found that, in order to have acquitted Yeager of securities fraud, the jury must have determined that he did not possess insider information. *Yeager*, 557 U.S. at 120 (citing *United States v. Yeager*, 521 F.3d 367, 378 (5th Cir. 2008), *rev'd and remanded,* 557 U.S. 110 (2009), and *cert. granted, judgment vacated sub nom. Hirko v. United States*, 557 U.S. 930 (2009) ("[T]he jury must have found when it acquitted Yeager that Yeager himself did not have any insider information that contradicted what was presented to the public.") ("*Yeager I*")). This should have precluded the government from prosecuting Yeager again for the insider trading counts because possession of insider knowledge was an essential element of insider trading that the jury had already decided in his favor. However, the appellate court's analysis took a wrong turn when it then looked at the acquittals alongside the hung counts for insider trading and determined that if "the jury found that [petitioner] did not have insider information, then the jury, acting rationally, would have also acquitted [him] of the insider trading counts" and concluded that Yeager's possession of insider information was not "necessarily decided." *Id.* (citing *Yeager I*). The Supreme Court held that the appellate court erred in taking this additional step because "there is no way to decipher what a hung count represents," and "consideration of hung counts has no place in the issue-preclusion analysis." *Yeager*, 557 U.S. at 121–22. Rather, to "identify what a jury necessarily determined at trial, courts should scrutinize a jury's decisions, not its failures to decide." *Id.* at 122.

Here, unlike in *Yeager*, the jury's acquittals on Counts 2 and 3 do not lead to only one conclusion regarding an issue of ultimate fact (*i.e.*, whether Cervantes possessed VICAR purpose for Counts 5 and 6). Defendant argues strenuously that this is not the case because the government at trial made arguments reflecting that the "purpose element" in Counts 5 and 6 was "directly related to, and overlapping with, the conspiratorial and murderous purposes associated with Counts 1, 2, and 3 . . . ." (Reply, Dkt. No. 1498 at 18.) Although the government did argue that a VICAR purpose applied to these counts, it also stated that VICAR murder (Count 5) differed from VICAR

13

murder conspiracy (Count 2): "This is not a conspiracy; this is just a straight up VICAR murder." (Reporter's Transcript, Dkt. No. 1414 at 8152.)[6]

Defendant's authorities on this issue, in which defendants successfully showed that issues were necessarily decided in their favor, do not assist him. *See Ashe*, 397 U.S. at 445 (holding in a case involving the robbery of six players at a poker game, where the "single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers, and the jury "by its verdict found that he had not," collateral estoppel barred a second prosecution of petitioner for robbing one of the players); *Sealfon v. United States*, 332 U.S. 575, 580 (1948) (holding in a prosecution for conspiracy to defraud the United States, where the jury acquitted petitioner after finding that he had not written a letter to a certain Greenberg "pursuant to an agreement with Greenberg to defraud," the government could not thereafter prosecute him for aiding and abetting Greenberg's false invoices with the same letter).

On this record, defendant has not met his burden to show that the issue of VICAR purpose with respect to Counts 5 and 6 was necessarily decided in his favor. Accordingly, the government is not precluded on collateral estoppel grounds from retrying Counts 5 and 6, including the issue of whether Cervantes committed those murders with VICAR purpose.[7]

**C. Issue 3: Exclusion of Evidence at Trial**

Finally, defendant argues that upon any retrial of Counts 5 and 6, the doctrine of collateral estoppel would bar the government from introducing evidence that the Coolidge Killings were (a) premeditated, (b) the product of express malice killing, (c) the product of an implied malice killing, or (d) were a conspiratorial act related to: (1) defendant's conspiring to conduct the affairs of a racketeering organization as alleged in Count 1; (2) defendant's alleged conspiracy to murder in aid

---

[6] The Court has reviewed the government's closing argument and finds that the government appropriately discussed the issue of VICAR purpose with respect to each count.

[7] Although defendant does not argue that the "same offense" vein of the Double Jeopardy doctrine bars the retrial of Counts 5 and 6, the Court notes that this approach would not alter the result because the crimes of conspiracy to commit murder and murder are not the "same offense." *See United States v. Felix*, 503 U.S. 378, 389 ("[A] substantive crime and a conspiracy to commit that crime are not the 'same offence' for double jeopardy purposes.").

14

of racketeering as alleged in Count 2; and/or (3) defendant's alleged conspiring to assault with a deadly weapon in aid of racketeering as alleged in Count 3. (Motion at 2.) Defendant argues that the overt acts and conspiratorial acts appended to Counts 2 and 3 and also included in Counts 5 and 6 were incorporated by reference from Count 1 and are subject to collateral estoppel.

Defendant argues under *Ashe* and *Yeager* that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe*, 397 U.S. at 443. "A factfinder's determination that the government failed to carry its burden on an issue in the first proceeding has preclusive effect in a subsequent proceeding raising that same issue, provided that both proceedings are governed by the same standard of proof." *Wilkinson v. Gingrich*, 806 F.3d 511, 518 (9th Cir. 2015) (citations omitted). Defendant contends that whether defendant conspired to commit VICAR murder (Count 2) and/or VICAR assault (Count 3), or possessed a weapon in aid of a VICAR crime (Count 4) are matters that have been resolved against the government in this case, and therefore, the government may not retry them.

In turn, the government argues that evidence related to the counts for which defendant was acquitted would be admissible in a future prosecution on Counts 5 and 6. It cites *Dowling v. United States*, 493 U.S. 342, 348 (1990), in which the Supreme Court held that the introduction of evidence relating to a crime that defendant had previously been acquitted of committing did not violate double jeopardy or due process. In *Dowling*, defendant Dowling was previously acquitted of a burglary during which the burglar wore a mask. Dowling later stood trial for a bank robbery that also involved a masked perpetrator. At the robbery trial, the prosecution presented the burglary victim as a witness, and she testified that a man wearing a knitted mask had come into her home, that after a struggle ensued she unmasked him, and that she identified him as Dowling. *Id.* at 344–45. Because the prosecution offered her testimony as Federal Rule of Evidence 404(b) "other crime" evidence for which the burden of proof was only a preponderance of evidence—rather than the higher beyond a reasonable doubt standard applied by the jury who acquitted Dowling of burglary—the Court held that its presentation at the robbery trial did not violate the collateral-estoppel component of the Double Jeopardy Clause. *Id.* at 348–49; *see also Charles*, 228 F.3d at

15

986 (evidence of a prior stabbing for which petitioner had been acquitted, introduced on issue of motive in petitioner's murder prosecution, was not barred by the collateral estoppel element of the Double Jeopardy clause, as the stabbing could be relitigated under a lower standard of proof in the murder trial than in the stabbing trial).

The government argues under *Dowling* and *Charles* that it would not introduce evidence of Cervantes' participation in the VICAR murder or assault conspiracies for the purpose of proving his agreement to participate in them beyond a reasonable doubt. Rather, the government argues that it seeks to offer such evidence under a lower standard of evidence to establish "the existence of the enterprise, the defendant's role in the enterprise, even his motive to kill under Rule 404(b), or perhaps for other reasons," and that it is therefore not precluded by the Double Jeopardy clause." (Opp. at 27.) The government further contends that in convicting defendant of RICO conspiracy in Count 1, the jury definitely determined his participation in the gang.

First of all, it is well established that "the government may prosecute successively a conspiracy and the substantive offenses it encompasses," as a "substantive crime and a conspiracy to commit that crime are not the same offense for double jeopardy purposes." *Saccoccia*, 18 F.3d at 798 (citation omitted). If the Court were to grant defendant's request to exclude all evidence related to the alleged conspiracies in Counts 2 and 3 for which the jury acquitted defendant, it would effectively prohibit the government from prosecuting the substantive offenses that those Counts encompassed.

Moreover, the cases defendant cites in which courts have decided that evidence related to an offense for which a defendant was acquitted could not be presented at a subsequent trial differed from that at bar. For example, in *United States v. Powell*, 632 F.2d 754, 757 (9th Cir. 1980), defendant Powell was acquitted at trial of possession of marijuana with intent to distribute. The government then indicted him for conspiracy, and Powell argued that his acquittal for the possession offense estopped the government from trying him for conspiracy. The court allowed the conspiracy prosecution to proceed, reasoning that there were other overt acts that could support the charge, but precluded the government from realleging the overt acts related to possession. *Id.* at 757–58; *see also Wilkinson*, 806 F.3d 511, 517, 520 (9th Cir. 2015) (issue in traffic court speeding

case of which defendant was acquitted—whether he was the driver—and issue in subsequent court perjury case of which defendant was convicted—whether he was telling the truth when he denied being the driver in traffic court case—both turned on factfinder's conclusions regarding identity of the driver and were sufficiently similar and material for collateral estoppel to apply). In *Powell*, a conviction of defendant for conspiracy based on possession would have directly conflicted with the jury's acquittal on possession, and thus allegations of possession were properly excluded from the subsequent trial. Similarly in *Wilkinson*, a conviction for perjury would have conflicted with the court's previous acquittal based on lack of identification, and Double Jeopardy barred this unfair result.

Here, on the other hand, a conviction on Counts 5 and 6 for VICAR murder would not conflict with the jury's acquittal verdicts on Counts 2 and 3. Rather, as the government proposes, the evidence related to Counts 2 and 3 may be used, for example, to show defendant's motive to kill under Rule 404(b) under a preponderance of the evidence standard. This is entirely proper. *See Dowling*, 493 U.S. at 349 ("[A]n acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof.").[8] Therefore, collateral estoppel does not bar the introduction of evidence related to Counts 2 and 3 in the retrial of Counts 5 and 6.

## IV. CONCLUSION

Accordingly, defendant's motion is **DENIED.**

This terminates Docket No. 1452.

**IT IS SO ORDERED**.

Date: November 30, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[8] Defendant attempts to discount the applicability of *Dowling* on the basis that the *Dowling* collateral estoppel analysis took place in the context of two entirely separate criminal prosecutions, whereas a retrial in this case would involve the same set of facts previously presented to the jury in the first trial. Given that defendant has not presented any authority demonstrating that this distinction makes a difference, the Court is unpersuaded.

17